STATE of Wisconsin, Plaintiff-Respondent,

v.

Randy J. LECHNER, Defendant-Appellant.†

Supreme Court

*No. 96–2830–CR. Oral argument February 20, 1998.—Decided April 30, 1998.*

(Also reported in 576 N.W.2d 912.)

†Motion for reconsideration denied June 16, 1998.

394

 

For the defendant-appellant there were briefs by *Craig W. Albee* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee and oral argument by *Craig W. Albee*.

For the plaintiff-respondent the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. This case presents three issues for review:[1]

(1) Whether the State violated the defendant's constitutional rights to be free from double jeopardy when the defendant pled no contest to and was sentenced for both second-degree reckless homicide and homicide by intoxicated use of a vehicle where the defendant's criminal conduct resulted in the death of one person;

(2) Whether the State violated the defendant's constitutional rights to be free from double jeopardy when the defendant pled no contest to and was sentenced for two counts of second-degree reckless

---

[1] In our consideration and analysis of the present case, we have renumbered and slightly reworded the three issues certified by the court of appeals to better reflect the issues as raised by the parties in their briefs and as presented during oral arguments before this court. We do not believe that this renumbering and rewording alters in any material way the issues as certified by the court of appeals.

endangerment arising out of one episode of reckless driving; and

(3) Whether the circuit court erroneously exercised its discretion when it sentenced the defendant to the maximum prison term allowed by law or when it decided not to modify the sentence it imposed on the defendant when the record shows, *inter alia*, that the circuit court referred to a presentence report containing inaccurate information as to the number of the defendant's criminal convictions and that the circuit court admonished the legislature's failure to be tough on drunk drivers.

¶ 2. This case is before the court on a request for certification filed by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1995–96). The Circuit Court for Racine County, Judge Dennis J. Barry, denied defendant Randy Lechner's motion for post-conviction relief, concluding that (1) Lechner's constitutional right to be free from double jeopardy was not violated when he pled no contest to both second-degree reckless homicide and intoxicated vehicular homicide for the slaying of one person; (2) Lechner's constitutional right to be free from double jeopardy was not violated when he pled no contest to two counts of reckless endangerment arising out of one episode of reckless driving; and (3) the circuit court was not required to modify the prison term to which it sentenced Lechner. Lechner appealed both the judgment of conviction and sentence and the circuit court's denial of his post-conviction motions. The court of appeals certified to this court three issues for review. We answer each of the three issues in the negative and affirm the order of the circuit court.

¶ 3. The relevant facts of this case are not disputed. On December 4, 1994, a witness observed a

397

vehicle driven by the defendant, Randy Lechner, weaving in and out of traffic as it passed each in a succession of vehicles traveling southbound on State Highway 31. In his rearview mirror, the witness watched Lechner drive his vehicle across the double yellow center line of the highway to pass the vehicle traveling immediately behind the witness. The witness testified that Lechner then passed the vehicle in which he was traveling and the vehicle immediately in front of the witness. When Lechner reentered the southbound lane of traffic, the driver of the vehicle Lechner had just passed was forced to brake to avoid a collision. The witness estimated that Lechner was driving at a speed between 60 and 65 miles per hour even though the posted speed limit in that designated no passing zone was 45 miles per hour. The witness then watched as Lechner again drove his vehicle across the center line, passed another vehicle, and abruptly cut back into the southbound lane of traffic. Once again, the driver of the vehicle Lechner had just passed was forced to brake to avoid a collision.

¶ 4. When Lechner again drove his vehicle across the center line to pass another vehicle, he collided head-on with a northbound vehicle driven by Jan Pinney. The collision caused great bodily harm to Jan and to her daughter, Heather Pinney, and it killed seven-year-old Robert Pinney. Lechner was later arrested and taken into custody. A post-arrest blood test showed that Lechner had a blood alcohol concentration of 0.142%, a level above the legal limit for operating a motor vehicle. *See* Wis. Stat. § 340.01(46m) (1993–94).[2]

---

[2] Unless otherwise stated, all future references to Wis. Stats. are to the 1993–94 version of the statutes.

**Wis. Stat. § 340.01(46m)** "Prohibited alcohol concentration" means one of the following:

¶ 5. In its criminal complaint and amended complaint, the State charged Lechner with ten counts of violating state law: (1) one count of second-degree reckless homicide; (2) one count of intoxicated vehicular homicide; (3) two counts of causing great bodily harm by operating a motor vehicle while under the influence of alcohol;[3] (4) three counts of operating a vehicle with a prohibited blood alcohol concentration; and (5) three counts of recklessly endangering the safety of another.

¶ 6. Relevant to the three issues now before this court, Lechner by pretrial motion challenged on constitutional grounds the charges for reckless homicide and intoxicated vehicular homicide, arguing that he could not be convicted twice for killing the same person. The circuit court denied Lechner's motion. Lechner also challenged on constitutional grounds the three counts of reckless endangerment, arguing that he could not be charged more than once for the same criminal act of reckless driving. The circuit court denied this motion. After a plea agreement was reached by the State and Lechner, Lechner ultimately pled no contest to the following offenses: (1) second-degree reckless homicide, in violation of Wis. Stat. § 940.06; (2) homicide by intoxicated use of a vehicle, in violation of Wis. Stat. § 940.09(1)(a); (3) causing great bodily harm by intoxicated use of a vehicle, in violation of Wis. Stat. § 940.25(1)(a); (4) causing injury by intoxicated use of a vehicle, in violation of Wis. Stat. § 346.63(2)(a); and (5)

---

(a) If the person has one or no prior convictions, suspensions, or revocations. . .an alcohol concentration of 0.1 or more.

[3] The State later reduced one count of causing great bodily harm by operating a motor vehicle while under the influence of alcohol to one count of causing bodily harm by operating a motor vehicle while under the influence of alcohol.

two counts of second-degree recklessly endangering the safety of another, in violation of Wis. Stat. § 941.30(2).[4]

¶ 7. At the sentencing hearing, the circuit court sentenced Lechner to the maximum sentence on each count, with the sentences to run consecutive to each other, for a total prison sentence of 30 years. The court rejected both the State's recommended sentence of 20 years and defense counsel's four-year recommendation. After the sentence was imposed, Lechner filed a post-conviction motion challenging his convictions and his sentence. Lechner again argued that his separate convictions for reckless homicide and homicide by intoxicated use of a vehicle and his two convictions for reckless endangerment violated his constitutional protection against double jeopardy and violated his fundamental right to due process. Lechner also challenged the sentences imposed by the court, arguing that the circuit court had erroneously exercised its discretion by relying on inaccurate information in the presentence report, by ignoring mitigating factors, and by employing a preconceived sentencing policy.

¶ 8. After a hearing, the circuit court denied Lechner's post-conviction motions. Lechner appealed to the court of appeals for review of the circuit court's denials. The court of appeals requested certification of this case pursuant to Wis. Stat. § (Rule) 809.61. We accepted the certification and answer the three issues certified by the court of appeals.

¶ 9. The first two issues certified by the court of appeals require us to discern whether the State violated the defendant's constitutional rights to be free

_____

[4] Pursuant to the plea agreement, the State dismissed the three counts of operating a vehicle while under the influence of alcohol, in violation of Wis. Stat. § 346.63 and one of the three counts of second-degree reckless endangerment.

from double jeopardy. Whether an individual has been twice placed in jeopardy for the same offense in violation of the Fifth Amendment to the United States Constitution and art. I, § 8 of the Wisconsin Constitution is a question of law. *See State v. Sauceda*, 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992)(citing *State v. Kramsvogel*, 124 Wis. 2d 101, 107, 369 N.W.2d 145 (1985)). Reviewing the first two certified issues, we therefore owe no deference to the circuit court's decisions. *See id.*; *State v. Harris*, 161 Wis. 2d 758, 760, 469 N.W.2d 207 (Ct. App. 1991).

¶ 10. Both the United States and Wisconsin Constitutions protect a criminal defendant against being twice placed in jeopardy for the same offense.[5] The double jeopardy clause embodies three protections: "protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishments for the same offense." *Sauceda*, 168 Wis. 2d at 492 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). In two

[5] The double jeopardy clause of the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. Article I, § 8 of the Wisconsin Constitution states: "[N]o person for the same offense may be put twice in jeopardy of punishment." Because the jeopardy provisions of the United States and Wisconsin Constitutions are "identical in scope and purpose," this court has accepted decisions of the United States Supreme Court, where applicable, as controlling the double jeopardy provisions of both constitutions. *Day v. State*, 76 Wis. 2d 588, 591, 251 N.W.2d 811 (1977); *see also State v. Calhoun*, 67 Wis. 2d 204, 220, 226 N.W.2d 504 (1975).

separate multiplicity challenges, the defendant here raises the third protection against double jeopardy.[6]

¶ 11. The protection against multiple punishments for the same offense is generally invoked in both a "lesser-included offense" case where the defendant argues that he or she has been punished for committing a greater offense and a lesser-included offense, *see, e.g., United States v. Jeffers*, 432 U.S. 137 (1977); *Sauceda*, 168 Wis. 2d at 492–93, and a "continuous offense" case where the defendant argues that he or she has been punished for two or more counts of the same offense arising out of one criminal act. *See, e.g., In re Snow*, 120 U.S. 274 (1887); *Rabe*, 96 Wis. 2d at 64–65. The defendant here raises both challenges. Although the focus of our analysis of each of the defendant's challenges varies, we apply the same test to both.

¶ 12. A defendant may be charged and convicted of multiple counts or crimes arising out of one criminal act only if the legislature intends it. *See State v. Kuntz*, 160 Wis. 2d 722, 754, 467 N.W.2d 531 (1991); *Geitner v. State*, 59 Wis. 2d 128, 130–31, 207 N.W.2d 837, 839 (1973); *see also Missouri v. Hunter*, 459 U.S. 359, 366–69 (1983). We must, therefore, discern whether the legislature intended to allow multiple punishments for the offenses at issue in this case. Wisconsin courts

---

[6] The term "multiplicity," as used in double jeopardy challenges, is defined as encompassing both the charging of a single statutory offense in more than one count, *see Harrell v. State*, 88 Wis. 2d 546, 555, 277 N.W.2d 462 (Ct. App. 1979)(citing *United States v. Free*, 574 F.2d 1221 (5th Cir. 1978)), and the question of merger: "whether a single criminal episode which contains the elements of more than one distinct offense merges into a single offense." *Id.* (citing *United States v. Umentum*, 401 F.Supp. 746, 750 (E.D. Wis. 1975)).

employ a two-part test to determine whether the legislature intended that multiple punishments be imposed on one defendant for the same offense arising from a single course of conduct. *See Sauceda*, 168 Wis. 2d at 493. In determining the legislature's intent, the courts of this state consider: (1) whether each offense is identical in law and in fact;[7] and (2) whether the legislature intended to allow multiple convictions for the offenses charged. *Sauceda*, 168 Wis. 2d at 493, 495. With this two-part test, we analyze in turn both the defendant's "lesser-included offense" challenge and his "continuous offense" challenge.

¶ 13. On appeal, the defendant first argues that the State violated his constitutional right to be protected from double jeopardy when the judgment of conviction was entered and he was sentenced for both second-degree reckless homicide in violation of Wis. Stat. § 940.06 and homicide by intoxicated use of a vehicle in violation of Wis. Stat. § 940.09(1)(a) where one criminal act by the defendant resulted in the death

---

[7] As we explained in *State v. Sauceda*, 168 Wis. 2d 486, 485 N.W.2d 1 (1992), the focus of the first part of this test varies with respect to particular challenges raised. In a "lesser-included offense" challenge, the factual situations underlying the offenses are the same, so our focus is on whether the offenses are also identical in law. *See id.* at 493–94 n.8; *see, e.g., State v. Kuntz*, 160 Wis. 2d 722, 753–57, 467 N.W.2d 531 (1991); *State v. Wolske*, 143 Wis. 2d 175, 180–185, 420 N.W.2d 60 (Ct. App. 1988). In a "continuous offense" challenge, the course of conduct is alleged to have constituted multiple violations of the same statutory provision, so our focus is not on statutory definitions but on the facts of a given defendant's criminal activity. *See Sauceda*, 168 Wis. 2d at 493–94 n.8; *see, e.g., State v. Rabe*, 96 Wis. 2d 48, 65–68, 291 N.W.2d 809 (1980); *State v. Van Meter*, 72 Wis. 2d 754, 758, 242 N.W.2d 206 (1976).

of one person.[8] The defendant contends that the reckless homicide offense is a lesser-included offense of the intoxicated use offense, and therefore conviction and punishment under both provisions are multiplicitous. We disagree.

¶ 14. In analyzing the "lesser-included offense" challenge, we must first determine whether the offenses of second-degree reckless homicide and homicide by intoxicated use of a vehicle are the same offense or are different in either fact or law. Since the factual situations underlying both offenses in this case are identical, our focus is on whether the offenses are also identical in law. The determinative inquiry, therefore, is whether the criminal statutes define one offense as a lesser-included offense of the other. *See Sauceda*, 183 Wis. 2d at 493–94 n.8; *see, e.g., Kuntz*, 160 Wis. 2d at 753–57; *State v. Wolske*, 143 Wis. 2d 175, 180–85, 420 N.W.2d 60 (Ct. App. 1988).

---

[8] On appeal, the defendant also argues that to convict him of and sentence him for both second-degree reckless homicide and homicide by intoxicated use of a vehicle violated his constitutional right to due process and "fundamental fairness." By pleading no contest to the charged offenses, the defendant waived these constitutional challenges. It is well-established that a plea of no contest, knowingly and understandingly made, constitutes a waiver of non-jurisdictional defects and defenses, including claimed violations of constitutional rights. *See State v. Riekkoff*, 112 Wis. 2d 119, 122–23, 332 N.W.2d 744 (1983) (citing *Hawkins v. State*, 26 Wis. 2d 443, 448, 132 N.W.2d 545, 547–48 (1965)). We therefore do not address the due process and fundamental fairness arguments here raised by the defendant. The defendant's plea of no contest, however, did not waive his double jeopardy challenges. *See State v. Hartnek*, 146 Wis. 2d 188, 192 n.2, 430 N.W.2d 361 (1988); *State v. Morris*, 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264 (1982).

██

¶ 15. Under Wisconsin law, the determination whether offenses are different in law or whether one offense is a lesser-included offense of another is controlled by the "elements only" test set out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which has been codified in Wis. Stat. § 939.66(1).[9] *See Sauceda*, 168 Wis. 2d at 493. In *Blockburger*, the United States Supreme Court held that where the same act constitutes a violation of two distinct statutory provisions, the test under the double jeopardy clause is whether each provision requires proof of a fact which the other does not. *See Blockburger*, 284 U.S. at 304. Under this test, two offenses are different in law if each statutory crime requires for conviction proof of an element which the other does not require. *See Sauceda*, 168 Wis. 2d at 494–95. Only then can it be said that the legislature has promulgated separate, distinct offenses providing for multiple convictions and punishments. *See State v. Bohacheff*, 114 Wis. 2d 402, 411–12, 338 N.W.2d 466 (1983).

██

¶ 16. Applying the "elements-only" test of *Blockburger* and Wis. Stat. § 939.66(1) to the offenses involved in this case, we conclude that second-degree reckless homicide is not a lesser-included offense of homicide by intoxicated use of a vehicle. A comparison of the elements of the statutes involved reveals that a conviction for second-degree reckless homicide

---

[9] **Wis. Stat. § 939.66 Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged.

requires proof of elements not required to prove homicide by intoxicated use of a vehicle and that a conviction for homicide by intoxicated use of a vehicle requires proof of elements not required to prove second-degree reckless homicide.

¶ 17. The offense of second-degree reckless homicide contrary to Wis. Stat. § 940.06 comprises two elements: (1) that the defendant caused the death of the victim; and (2) that the defendant caused the death by criminally reckless conduct.[10] *See* Wis. JI-Criminal 1060 at 1 (1989). In contrast, the offense of homicide by intoxicated operation of a motor vehicle contrary to Wis. Stat. § 940.09(1)(a) comprises three elements: (1) that the defendant operated a motor vehicle; (2) that the defendant's operation of that vehicle caused the death of the victim; and (3) that the defendant was under the influence of an intoxicant at the time he or she operated the vehicle. *See* Wis. JI-Criminal 1185 at 1 (1993).

¶ 18. A conviction for homicide by intoxicated use of a vehicle, therefore, does not require proof that the defendant acted with criminal recklessness or that such conduct caused the victim's death. Similarly, a conviction for second-degree reckless homicide does not require proof that the defendant was operating a motor vehicle or that the defendant was under the influence of alcohol. Under the elements-only test applied in this state, second-degree reckless homicide in violation of Wis. Stat. § 940.06 is not a lesser-included offense of homicide by intoxicated use of a vehicle in violation of § 940.09(1)(a).

---

[10] "Criminal recklessness" is defined in Wis. Stat. § 939.24 (1): "[T]he actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk."

¶ 19. Since second-degree reckless homicide is not a lesser-included offense of homicide by intoxicated use of a vehicle, we presume that the legislature intended to permit cumulative punishments for both offenses. *See Sauceda*, 168 Wis. 2d at 495 (citing *Kuntz*, 160 Wis. 2d at 756; *Rabe*, 96 Wis. 2d at 63). This presumption is rebutted only if other factors clearly indicate a contrary legislative intent. *See Kuntz*, 160 Wis. 2d at 755 (citing *Hunter*, 459 U.S. at 367). Factors that may indicate a contrary legislative intent regarding multiple punishment include the language of the statutes, the legislative history, the nature of the proscribed conduct, and the appropriateness of multiple punishment. *See Kuntz*, 160 Wis. 2d at 756; *Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729, 734 (1981). In this case, none of these factors indicates a legislative intent contrary to allowing convictions for both second-degree reckless homicide and homicide by intoxicated use of a vehicle where the criminal act of the defendant resulted in a single death.

¶ 20. First, the language of the statutes does not indicate a contrary legislative intent. Both Wis. Stat. §§ 940.06 and 940.09(1)(a) expressly provide that a person is guilty of a Class C felony if that person commits certain pro scribed conduct causing the death of another person. Neither section states or implies that a conviction under its provisions precludes a conviction for homicide under a separate statutory section, even if a person's criminal act causes the death of only one person. In enacting the specific language of Wis. Stat. §§ 940.06 and 940.09(1)(a), the legislature did not indicate that a person could not be convicted of violating both statutes for causing the death of one person.

¶ 21. Second, the legislature, by enacting Wis. Stat. § 939.66(2), has specifically addressed the issue of

multiple homicide convictions for a criminal act causing a single death. Where a single act of a defendant forms the basis for a crime punishable under more than one statutory provision, Wis. Stat. § 939.66(2) provides that a defendant may not be convicted for two criminal homicides if one is "a less serious type of criminal homicide."[11] The defendant in this case argues that this section "unequivocally" evinces the legislature's intent to allow only one homicide conviction for causing the death of one person. A closer reading of the plain language in Wis. Stat. § 939.66(2), however, establishes just the opposite.

¶ 22. The plain language of Wis. Stat. § 939.66(2) does not prohibit multiple homicide convictions for killing one person. It bars multiple convictions only when one of the homicide convictions is for a "less serious type" of homicide. Noticeably absent from the prohibitions of Wis. Stat. § 939.66(2) is a bar against multiple homicide convictions when the homicides are "equally serious." Since the legislature enacted Wis. Stat. § 939.66(2) as a prohibition against multiple homicide convictions and limited its application to situations where one homicide conviction is for a less serious type of homicide, we can infer a legislative intent not to prohibit multiple convictions when the defendant is convicted for equally serious types of homicide.

¶ 23. The inference that the legislature did not intend to prohibit multiple convictions for "equally serious" homicides is supported by the fact that the

---

[11] **Wis. Stat. § 939.66 Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:...

(2) A crime which is a less serious type of criminal homicide than the one charged.

statutory provision immediately following Wis. Stat. § 939.66(2) prohibits multiple convictions when one crime is a "less serious *or equally serious type* of battery." Wis. Stat. § 939.66(2m) (emphasis added). When originally enacted in 1986, Wis. Stat. § 939.66(2m) prohibited multiple convictions for two battery offenses only when one conviction was for a less serious type of battery. *See* 1985 Wis. Act 144, § 1. In 1993, at the same time the legislature created a number of separate but equally serious battery offenses, it amended Wis. Stat. § 939.66(2m) to prohibit multiple convictions for less serious or equally serious types of battery. *See* 1993 Wis. Act 441, §§ 2 and 4. With this amendment, the legislature apparently intended to bar multiple convictions for a single act of battery, regardless of the seriousness of the offenses.

¶ 24. In contrast, when it amended Wis. Stat. § 940.09(1)(a) in 1991 to raise homicide by intoxicated use of a vehicle to a Class C felony, the legislature did not amend Wis. Stat. § 939.66(2) to bar multiple convictions for that offense and other equally serious types of homicide. *See* 1991 Wis. Act 277, § 53–57. Although different homicide offenses of the same criminal class have existed since Wis. Stat. § 939.66(2) was enacted, the legislature has never amended that section to bar multiple convictions for equally serious types of homicide.

¶ 25. Considering the specific acts of the legislature and comparing the current language in Wis. Stat. §§ 939.66(2) and (2m), we can reasonably presume that the legislature was aware of the distinction between "less serious" and "equally serious" types of crimes. We can similarly presume from the presence of the "equally serious" language in Wis. Stat. § 939.66(2m) and its absence in the immediately preceding

§ 939.66(2) that the legislature intended to prohibit multiple convictions for equally serious types of battery, but it did not intend to prohibit multiple convictions for equally serious types of homicide. *See In re R.W.S.*, 162 Wis. 2d 862, 879, 471 N.W.2d 16 (1991). The legislative history and precise language of Wis. Stat. § 939.66(2) and (2m) evince a legislative intent to allow multiple convictions for equally serious homicides when a single act of the defendant results in the death of one person.

¶ 26. The defendant responds by arguing that his convictions are barred under Wis. Stat. § 939.66(2) because second-degree reckless homicide is a "less serious type of homicide" than homicide by intoxicated use of a vehicle. The defendant notes that a conviction for the intoxicated use offense carries the additional punishments of a mandatory revocation of the defendant's driver's license and a $250 driver assessment surcharge. The defendant contends that since a conviction for second-degree reckless homicide does not include these additional sanctions, that offense must be a less serious type of homicide than the intoxicated use offense. We find the defendant's argument unpersuasive.

¶ 27. Whether the legislature intended two classifications of homicide to be less or equally serious types of homicide is determined by reference to the penalty structure the legislature established in Wis. Stat. §§ 939.50 through 939.52. "While the word 'serious' is not expressly defined in [Wis. Stat. § ] 939.66, seriousness of an offense has been determined by this court on the maximum penalty which may be imposed." *State v. Davis*, 144 Wis. 2d 852, 857, 425 N.W.2d 411

(1988).[12] Particular to this case, the legislature has classified both second-degree reckless homicide and homicide by intoxicated use of a vehicle as Class C felonies. *See* Wis. Stat. §§ 940.06 and 940.09(1). Both offenses, therefore, carry the same maximum penalty of ten years in prison. *See* Wis. Stat. § 939.50(3)(c). Accordingly, applying the test this court established in *Davis*, we conclude that second-degree reckless homicide is not a less serious type of criminal homicide than homicide by intoxicated use of a vehicle under Wis. Stat. § 939.66(2).

¶ 28. We find irrelevant to this analysis the fact that a conviction for second-degree reckless homicide does not also carry a revocation of driving privileges or a $250 surcharge for driver assessment program. Neither the revocation nor the surcharge affects the maximum possible penalty allowed by the penalty

[12] In *State v. Davis*, 144 Wis. 2d 852, 425 N.W.2d 411 (1988), this court, considering the maximum possible prison sentence available for each offense, concluded that felony murder was a "less serious type of criminal homicide" than deprived mind murder under Wis. Stat. § 939.66(2). *Id.* at 861. The court recognized that Wis. Stat. § 940.02 classified both offenses as Class B felonies carrying a 20-year maximum prison sentence. The court, however, found more significant that a conviction for deprived mind murder, unlike a conviction for felony murder, did not bar a separate conviction for an underlying felony offense, and therefore could result in a maximum sentence of 40 years. *See id.* at 859–61. In this case, since neither second-degree reckless homicide nor homicide by intoxicated use of a vehicle is based on the commission of an underlying felony offense, we need not consider whether the possible penalty for an underlying offense increases the total maximum prison term to which the defendant could be sentenced. Rather, we find dispositive in this case the maximum prison sentence provided for each offense under Wis. Stat. § 939.50(3)(c).

structure the legislature established in Wis. Stat. §§ 939.50 through 939.52. The absence of a license revocation and a surcharge does not make second-degree reckless homicide a "less serious type of criminal homicide" than homicide by intoxicated use of a vehicle under Wis. Stat. § 939.66(2).

¶ 29. Furthermore, it appears that the legislature enacted Wis. Stat. §§ 940.06 and 940.09(1)(a) to proscribe different criminal acts and to protect distinct public interests. The conduct proscribed by the intoxication statute is operating a vehicle while intoxicated and thereby causing death or great bodily injury. *See Wolske*, 143 Wis. 2d at 184 (citing *State v. Caibaiosai*, 122 Wis. 2d 587, 591, 363 N.W.2d 574 (1985)); *cf. Bohacheff*, 114 Wis. 2d at 414–415 (discussing Wis. Stat. § 940.25 (1981–82)). The purpose of the intoxication statutes is to "provide maximum safety for all users of the highways of this state" from the harm threatened by "[o]peration of motor vehicles by persons who are under the influence of an intoxicant." *Wolske*, 143 Wis. 2d at 184 (quoting *Caibaiosai*, 122 Wis. 2d at 591).

¶ 30. In contrast, the reckless homicide statutes proscribe a person from knowingly creating an "unreasonable and substantial risk of death or great bodily harm to another person." Wis. JI-Criminal 1060 at 1. Wis. Stat. § 940.06 does not target alcohol use, nor is its scope limited to a defendant's operation of a motor vehicle. The apparent purpose of the reckless homicide statutes is to provide maximum safety on and off the highway to members of the general public.

¶ 31. "Where the statutes intend to protect multiple and varied interests of the victim and the public, multiple punishments are appropriate." *Bohacheff*, 114 Wis. 2d at 416. The different conduct proscribed by and

the different purposes of the reckless homicide and homicide by intoxicated use of a vehicle statutes further convince us that the legislature intended multiple convictions and punishments for those offenses.

¶ 32. For the foregoing reasons, we conclude that the legislature intended that multiple convictions and punishments attend the separate homicide offenses to which the defendant here pled no contest. We therefore answer in the negative the first issue certified by the court of appeals. The defendant's convictions and punishments for second-degree reckless homicide and homicide by intoxicated use of a vehicle are not multiplicitous, and, therefore, do not violate his right to be free from double jeopardy.

¶ 33. The defendant next argues that the State violated his constitutional right to be free from double jeopardy when he pled no contest to and was sentenced for two separate counts of second-degree recklessly endangering the safety of another, in violation of Wis. Stat. § 941.30, arising from one episode of reckless driving along a one-half mile stretch of highway. The defendant contends that to divide this offense into more than one count is multiplicitous, and that to convict and punish him under both reckless endangerment counts therefore violate his constitutional right to be free from double jeopardy. Again we disagree.

¶ 34. The double jeopardy clause bars the State from dividing a single offense into multiple charges. *See State v. Blenski*, 73 Wis. 2d 685, 245 N.W.2d 906 (1976). In determining whether the State has impermissibly divided a single course of conduct into separate violations of the same statute, courts of this state consider (1) whether each offense is identical in

law and in fact; and (2) whether the legislature's intent is to allow multiple convictions. *See Rabe*, 96 Wis. 2d at 65, 67.

¶ 35. In analyzing the defendant's "continuous offense" challenge, we must first discern whether the separate counts of second-degree reckless endangerment to which the defendant pled no contest are different in either fact or law. *See Rabe*, 96 Wis. 2d at 65; *State v. Van Meter*, 72 Wis. 2d 754, 758, 242 N.W.2d 206 (1976). Since the defendant pled no contest to two separate counts of violating the same statutory provision, the offenses are identical in law. *See Sauceda*, 168 Wis. 2d at 493–94 n.8; *Van Meter*, 72 Wis. 2d at 758. Our focus, therefore, is not on statutory definitions but on the facts giving rise to each offense; the determinative inquiry is whether a conviction for each offense requires proof of an additional fact that conviction for the other offenses does not. *See Sauceda*, 168 Wis. 2d at 493–94 n.8; *Van Meter*, 72 Wis. 2d 758; *see, e.g., Rabe*, 96 Wis. 2d at 65–68; *Harrell*, 88 Wis. 2d at 556–60. Accordingly, in "continuous-offense" cases such as this one, "the question turns on whether the defendant's repeated commission of the same offense at different places or times constitutes an ongoing crime or several separate offenses." *Rabe*, 96 Wis. 2d at 65.

¶ 36. In *Rabe*, this court upheld the defendant's conviction for separate counts of homicide for each death caused by the defendant's negligent operation of a vehicle where all deaths resulted from one accident. *See id.* at 76. The court there recognized that even though the offenses may be identical and contained within the same statutory section, the factual circumstances may be separated in time or sufficiently different in nature to justify multiple punishments. *See id.* at 65–66.

414

¶ 37. As in *Rabe*, the issue in this case is whether a defendant's acts constituted an ongoing crime or separate offenses. The defendant in this case argues that his reckless driving constituted just one offense because it occurred over a 30-second period of time and covered only a one-half mile stretch of road. This argument is unpersuasive. We do not dispense justice solely by the hands of a clock or the lengths of a ruler. *See, e.g., Harrell*, 88 Wis. 2d at 566 (holding that two acts of sexual intercourse between defendant and victim, separated by 20 minutes of conversation, constituted two separate and distinct acts of rape); *Melby v. State*, 70 Wis. 2d 368, 234 N.W.2d 634 (1975)(holding possession at same time and place of two types of illicit drug constituted two separate punishable counts of possessing a dangerous drug); *Madison v. Nickel*, 66 Wis. 2d 71, 223 N.W.2d 865 (1974)(holding four obscene magazines sold to the same person at the same time and place constituted four separate violations of an obscenity ordinance). Despite the length of time and the distance traveled, the defendant's conduct in this case supports two counts of reckless conduct.

¶ 38. The record in this case establishes that the defendant committed at least two distinct acts of reckless conduct, putting at risk the life of a different person with each act. According to the record, a witness observed the vehicle driven by the defendant swerving in and out of traffic at a rate of speed well above the posted speed limit. On at least two separate occasions, the defendant drove his vehicle across the double yellow centerline of the highway, accelerated, and passed a different vehicle. On at least two separate occasions, the defendant abruptly reentered the southbound traffic lane, forcing the driver of the vehicle he had just passed to take evasive action to avoid a collision. Each

time he drove his vehicle across the centerline of the highway, passed a different vehicle, and abruptly reentered the traffic lane, the defendant created a separate, unreasonable and substantial risk of harm to a different human being—the driver of the vehicle he had just passed and cut off on the highway.

¶ 39. It is significant that the defendant here did more than pass at one time a continuous line of cars, putting each successive driver at risk as he passed him or her. Each of the defendant's decisions to pass each successive vehicle was not the result of an original impulse to pass the first vehicle, but rather was a fresh impulse. Each of the defendant's acts of reckless conduct had come to an end before a separate act began. Each time he pulled his vehicle out and passed a different vehicle, the defendant commenced a separate, conscious decision to act. Each time the defendant exited and reentered the traffic lane, he completed a separate, distinct act of criminally reckless conduct.

¶ 40. Based on the facts set out in record, we conclude that there was a sufficient break in the defendant's conduct to constitute at least two separate and distinct criminal acts of second-degree reckless endangerment under Wis. Stat. § 941.30(2). *See Rabe,* 96 Wis. 2d at 66; *Harrell,* 88 Wis. 2d at 565.

¶ 41. Having determined that the defendant's repeated commission of the same offense at different places and times constituted separate punishable offenses, we next look to the intent of the legislature. It is multiplicitous to charge separate counts of the same offense, and to impose separate punishments upon conviction, if other factors clearly indicate that the legislature intended a single unit of prosecution for the

offenses for which the defendant was convicted. *See Rabe*, 96 Wis. 2d at 69; *Blenski*, 73 Wis. 2d at 693–94.

¶ 42. We conclude that there are no factors which clearly indicate that the legislature intended that all acts of second-degree reckless endangerment be prosecuted in a single count. First, this court has held that, as a general rule, where different victims are involved, the legislature intends to allow a corresponding number of punishable crimes. *See Rabe*, 96 Wis. 2d at 67–68; *see also Austin v. State*, 86 Wis. 2d 213, 223, 271 N.W.2d 668 (1978). In this case, each of the defendant's distinct criminally reckless acts endangered the safety of at least one other human being (the driver of each vehicle he passed and then cut off). We, therefore, presume that the legislature intended to allow a separate punishable offense for each of the defendant's criminally reckless acts.

¶ 43. Second, the language and purpose of Wis. Stat. § 941.30(2) indicate that the legislature's intent was to allow multiple convictions and punishments for each act of reckless endangerment. When reviewing the language of a criminal statute "[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. . . .If the latter, there can be but one penalty." *Blockburger*, 284 U.S. at 302 (quoting *Wharton's Criminal Law* (11th ed.) § 34 n.3); *see also Rabe*, 96 Wis. 2d at 70–74. Section 941.30(2) does not proscribe reckless conduct generally, but rather penalizes individual acts of criminal recklessness. For each conviction for violating Wis. Stat. § 941.30(2), a defendant must first be found to have endangered the safety of another person. *See* Wis. JI-Criminal 1347 at 1 (1989). Proof of the defendant's reckless conduct alone is insufficient for a conviction. *See id.* Section

417

941.30(2), therefore, punishes the individual acts of a defendant and not the course of action which those acts constitute. Each of the defendant's acts of second-degree reckless endangerment is separately punishable.

¶ 44. For the foregoing reasons, we conclude that the legislature intended that multiple punishments attend the separate counts to which the defendant here pled no contest. We therefore answer the second issue certified by the court of appeals in the negative. The defendant's convictions and punishments for two counts of second-degree recklessly endangering safety were not multiplicitous and, therefore, do not violate his rights to be free from double jeopardy.

¶ 45. The third issue certified by the court of appeals is whether the circuit court erroneously exercised its discretion either when it initially sentenced the defendant or when it refused to modify that sentence. On appeal, the defendant challenges on a number of grounds the sentence imposed by the circuit court and the court's decision not to modify its sentence. We address each in turn.

¶ 46. At the outset of our analysis, we note that our review of the circuit court's decision on sentencing differs from the standard of review we employed when considering the first two issues here addressed. When a criminal defendant challenges the sentence imposed by the circuit court, the defendant has the burden to show some unreasonable or unjustifiable basis in the record for the sentence at issue. *See State v. Thompson,* 172 Wis. 2d 257, 263, 493 N.W.2d 729 (Ct. App. 1992). When reviewing a sentence imposed by the circuit court, we start with the presumption that the circuit court acted reasonably. *See Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980). We will not interfere

with the circuit court's sentencing decision unless the circuit court erroneously exercised its discretion. *See McCleary v. State*, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971).[13] On appeal, we will "search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *Id.* at 282.

¶ 47. The defendant first argues that the circuit court's consideration of inaccurate information concerning the number of his criminal convictions violated his constitutional right to due process and requires resentencing. It is well-settled that a criminal defendant has a due process right to be sentenced only upon materially accurate information. *See United States v. Tucker*, 404 U.S. 443 (1972); *Bruneau v. State*, 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977). A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing "must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." *State v. Johnson*, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990).

¶ 48. Both parties and the circuit court recognize that the presentence report inaccurately listed the number of the defendant's prior criminal convictions. Rather than having four prior criminal convictions as

---

[13] The issue on review before the court is not whether we, as individual judges, each would have imposed a different sentence in the present case or would have modified that sentence on the defendant's motion for post-conviction relief. The issue is whether the sentencing court erroneously exercised its discretion in its decisions. Appellate judges should not substitute their preference for a particular sentence merely because they would have imposed a different sentence had they been in the circuit judge's position. *See Cunningham v. State*, 76 Wis. 2d 277, 251 N.W.2d 65 (1977).

listed in the presentence report, the defendant had three prior arrests and only one prior criminal conviction.[14] The question that remains is whether the circuit court relied on the inaccurate number of convictions when sentencing the defendant. We conclude that it did not.

¶ 49. The defendant has failed to show that the circuit court relied on the inaccurate number of the defendant's prior convictions contained in the

---

[14] Upon closer review, the inaccuracies in the presentence report do not appear as significant as the defendant would have this court believe. Although the record is somewhat unclear concerning Randy Lechner's criminal history, it appears that Lechner was arrested three times, once in each 1980, 1988, and 1990, but was ultimately convicted of only one *criminal* charge. In 1980, Lechner was arrested in Illinois and charged with two counts of possession with intent to deliver a controlled substance (cocaine) and two counts of possession with intent to deliver marijuana. Pursuant to a negotiated plea agreement, the Illinois prosecutor consolidated two of the counts against Lechner and dismissed the other two. Lechner then pled guilty to the consolidated count of possession with intent to deliver both a controlled substance and marijuana. Since the two counts were consolidated, the 1980 arrest resulted in only one criminal conviction. For this conviction, the court sentenced Lechner to three years of probation. In 1988, Lechner was arrested in Illinois and charged with battery. According to Lechner, he paid a fine for this offense. The record shows only that the battery charge was dismissed. Finally, in 1990, Lechner was arrested in Wisconsin for battery. Apparently pursuant to another negotiated plea, Lechner was charged only with a violation of a misdemeanor disorderly conduct ordinance. Lechner pled no contest to this *ordinance* violation, paid a fine, and was ordered by the court to attend an "Alternatives to Aggression" program. According to the presentence report, Lechner admitted that alcohol or drug use played a part in both battery arrests. Lechner later disputed this statement.

presentence report. On the contrary, the record shows that the circuit court in this case considered, and based its sentence on, those primary factors a circuit court should consider when deciding. which sentence to impose. These factors include "the gravity of the offense, the character of the offender, and the need for protection of the public." *Elias*, 93 Wis. 2d at 284; *see State v. Wickstrom*, 118 Wis. 2d 339, 354–55, 348 N.W.2d 183 (Ct. App. 1984).

¶ 50. At the sentencing hearing, the circuit court progressed through a detailed and comprehensive checklist considering the defendant's conscious decision to drink and drive, his "extremely reckless manner" of driving, and the "magnitude of the tragedy." The court also considered that the defendant had dropped out of high school, had a criminal record, and had a long history of drug and alcohol problems. In addition, the court considered the defendant's need for correctional treatment and rehabilitation, the need to protect the public from future criminal conduct by this defendant; and the need to impose a sentence that would prevent others from drinking and driving.

¶ 51. Before sentencing the defendant, the circuit court specifically referred to the inaccurate information contained in the presentence report when considering the character of the defendant. The circuit court's reference to the defendant's prior convictions, however, appears to have been no more than the court identifying individual episodes amounting to "warning signals" of which the defendant, should have been aware. The court included as warning signals not only the defendant's prior convictions, but also his long history of drug and alcohol use, his participation in a treatment program for aggressive behavior, and his

421

failure to complete a treatment program for alcohol abuse.

¶ 52. The circuit court made clear at the hearing on the motion for post-conviction relief that its focus during sentencing was not on the number of the defendant's prior convictions, but on the fact that the events giving rise to those alleged convictions evidenced the defendant's long history of drug and alcohol abuse—a history not disputed by the defendant. The circuit court, referring to the inaccurate information in the presentence report, explained:

> [I]n 1980 the defendant was convicted of two criminal counts of chemical usage, abuse, sale, but it's quite evident that the defendant was involved with mind altering chemicals. Again, you can substitute the number two for number ten or number one or even a deferred prosecution and no convictions. The point was, he had a problem. He had a brush with difficulty related to alcohol or mind altering drugs. . . .[T]he point was throughout his life, there were warning signs, and in so ignoring them, that was the factor. . .that I considered. . . .The inaccuracies [in the presentence report] in my opinion are not of such a nature that it's of any relevance to what this court considered.

When sentencing the defendant, the circuit court did not consider the gravity of his past offenses; nor did it express a need or desire to punish him as a repeat offender or as a career criminal. Rather, the court considered the defendant's past record of criminal offenses and his history of undesirable behavior patterns. Both are relevant factors in assessing the defendant's character. *See State v. Tew*, 54 Wis. 2d 361, 367–68, 195 N.W.2d 615 (1972). In this case, the number of the defendant's criminal offenses was a proper and rele-

vant factor for the circuit court to consider regardless of whether the offenses resulted in dismissal, acquittal, or conviction. *See Elias*, 93 Wis. 2d at 284; *State v. Bobbitt*, 178 Wis. 2d 11, 18, 503 N.W.2d 11 (Ct. App. 1993).

¶ 53. Considering the circumstances surrounding the defendant's sentencing and the circuit court's in-depth consideration of the gravity of the offenses in this case, the character of the defender, and the need for protection of the public, we conclude that the circuit court did not rely on inaccurate information in the presentence report and, therefore, did not violate the defendant's due process right to be sentenced only on materially accurate information. The circuit court did not erroneously exercise its discretion by denying the defendant's request for resentencing. .

¶ 54. The defendant next argues that his sentence must be modified because the inaccurate information contained in the presentence report was used to calculate the sentencing guidelines under Wis. Stat. § 973.012.[15] The defendant argues that recalculated sentence guidelines present a "new factor" the circuit court should consider in modifying the defendant's sentence. A "new factor" is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the circuit judge at the time of original sen-

---

[15] Wis. Stat. § 973.012 provides:

A sentencing court, when imposing a sentence, shall take the guidelines established under [Wis. Stat. § ] 973.011 into consideration. If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines. There shall be no right of appeal on the basis of the circuit court's decision to render a sentence that does not fall within the sentencing guidelines.

tencing, even though it was then in existence, it was unknowingly overlooked by all of the parties." *State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). Although the decision whether a new factor exists is a question of law, which we review de novo, *see Franklin,* 148 Wis. 2d at 9, we will overturn a circuit court's decision whether the new factor justifies sentence modification only when the court erroneously exercised its discretion. *See State v. Hegwood,* 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983); *State v. Smet,* 186 Wis. 2d 24, 34, 519 N.W.2d 697 (Ct. App. 1994).

¶ 55. Whether or not the recalculated sentence guidelines constitute a new factor, the circuit court's decision in this case not to modify the defendant's sentence based on the revised sentencing guidelines was not an erroneous exercise of discretion. A recalculation of the sentencing guidelines based on the accurate number of the defendant's prior convictions would have changed only the *suggested* sentence for the two second-degree recklessly endangering safety convictions from a term of imprisonment to a sentence of probation.[16] The circuit court, however, stated that based on what it found to be aggravating circumstances in this

---

[16] Recalculating the sentencing guidelines would not have altered the suggested maximum sentence for each homicide conviction. Calculated using the accurate number of the defendant's prior convictions, the sentencing guidelines for each of the homicide convictions would have called for sentences of 96–120 months. Calculated using the inaccurate information contained in the presentence report, the sentencing guidelines called for a sentence of 108–120 months. The maximum sentence suggested for each homicide conviction, calculated under either sentencing guidelines, was 120 months, the maximum sentence allowed under the law. *See* Wis. Stat. § 939.503(3)(c).

case it did not rely on the guidelines when it initially sentenced the defendant. A sentencing court is not required to impose a sentence that falls within the sentence suggested by the sentencing guidelines. *See* Wis. Stat. § 973.012.

> [T]he sentencing guidelines. . .[are] just that: guidelines, not edicts. Unless and until the legislature does away with indeterminate sentencing or adopts a system of minimum mandatory sentences for certain crimes, the responsibility of the trial court will continue to be to sentence within the range of the penalties established by the legislature.

*In the Matter of Judicial Administration Felony Sentencing Guidelines*, 120 Wis. 2d 198, 207, 353 N.W.2d 793 (1984) (Bablitch, J. concurring). The decision to impose a sentence outside those guidelines under the circumstances of this case, therefore, was within the sound discretion of the sentencing court. The fact that the sentencing court did not follow the sentencing guidelines did not give the defendant a right to appeal his sentence. *See State v. Elam*, 195 Wis. 2d 683, 685, 538 N.W.2d 249 (1995)(per curiam); Wis. Stat. § 973.012.[17]

---

[17] Under Wis. Stat. § 973.012, the circuit court was required to state on the record its reasons for deviating from the sentence recommended in the sentencing guidelines. When initially sentencing the defendant, the court in this case was unaware, due to the inaccurate presentence report, that it was imposing a sentence outside the sentencing guidelines, and therefore did not state any reasons for doing so. At both the sentencing hearing and the hearing on the post-conviction motions, however, the court set forth a detailed explanation of the reasons for the sentence it imposed. Under these circumstances, we find that the circuit court satisfied the requirements of Wis. Stat. § 973.012.

¶ 56. Although the inaccuracy in the presentence report resulted in a miscalculation of the sentencing guidelines, the circuit court indicated that it did not rely on the initial sentencing guidelines and that it would not have followed the recalculated sentencing guidelines. The court was under no obligation to do so. Based on the circumstances of this case, the circuit court's decision not to modify the defendant's sentence in light of the recalculated sentence was not an erroneous exercise of discretion.

¶ 57. The defendant also argues that the sentence to a prison term of 30 years was unduly harsh and excessive because the court applied a preconceived sentencing policy and because the sentence was disproportionately harsh in relation to sentences imposed in similar cases in Racine County. We recognize that it is an erroneous exercise of discretion for a sentencing court to have a preconceived sentencing policy "closed to individual mitigating factors." *State v. Ogden,* 199 Wis. 2d 566, 571, 544 N.W.2d 574 (1996). A prohibited sentencing policy exists, however, only where the court's predispositions are "specific or rigid so as to ignore the particular circumstances of the individual offender upon whom he or she is passing judgment." *Id.* The current record does not establish that the circuit court applied such a specific or rigid sentencing policy.

¶ 58. The defendant's argument that the circuit court applied a preconceived sentencing policy is based solely on a short colloquy delivered by the circuit court during sentencing. At the sentencing hearing, the circuit court expressed its disappointment with the legislature's mere rhetoric of getting tough on drunk driving. This colloquy, however, did not render the circuit court's sentence a result of some preconceived sentencing policy. On the contrary, the record shows

426

that the circuit court considered and weighed all relevant factors when sentencing the defendant. In particular, the circuit court considered a list of mitigating factors including the fact that the defendant expressed sincere remorse for the crimes he committed, that he had a successful career; and that he had a family to support.

¶ 59. In light of the gravity of the crime involved here and the defendant's refusal to heed a number of warning signals, the circuit court decided not to give much weight to these mitigating factors. Based on the "entire picture and all the opportunities that presented themselves [to the defendant]," the circuit court decided that the maximum sentences were appropriate and that those sentences should run consecutively. The record does not support the defendant's argument that the circuit court applied a preconceived sentencing policy.

¶ 60. The defendant's argument that the sentence was unduly harsh and excessive in relation to other sentences imposed in OWI cases in Racine county is without merit. There is no requirement that defendants convicted of committing similar crimes must receive equal or similar sentences. On the contrary, individualized sentencing is a cornerstone to Wisconsin's system of indeterminate sentencing. "[N]o two convicted felons stand before the sentencing court on identical footing. The sentencing court must assess the crime, the criminal, and the community, and no two cases will present identical factors." *Felony Sentencing Guidelines*, 120 Wis. 2d at 201. Imposing such a requirement would ignore the particular mitigating and aggravating factors in each case. The defendant here has failed to establish any connection between himself and his crimes and those defendants and

crimes to which he has compared his sentence. Absent such connection, "disparate sentences are totally irrelevant" to the sentence imposed in this case. *McCleary*, 49 Wis. 2d at 272.

¶ 61. Based on the foregoing, we conclude that the State did not violate the defendant's constitutional rights to be free from being twice placed in jeopardy for the same crime when the defendant pled no contest to and was sentenced for both second-degree reckless homicide and homicide by intoxicated use of a vehicle. We further conclude that the State did not violate the defendant's right to be free from double jeopardy when he pled no contest to and was sentenced for two separate counts of second-degree reckless endangerment. Finally, we also conclude that the circuit court did not erroneously exercise its discretion when it sentenced the defendant to the maximum 30-year prison sentence or when it decided not to modify this sentence. We therefore answer in the negative each of three issues certified by the court of appeals and affirm the order of the circuit court.

*By the Court.*—The order of the Racine County Circuit Court is affirmed.