Randy J. LECHNER, Petitioner,

v.

Jon LITSCHER, Secretary of Department of Corrections, and Wisconsin Department of Corrections, Respondents.

No. 99–C–1062.

United States District Court,
E.D. Wisconsin.

Aug. 7, 2002.

Craig W. Albee, Shellow, Shellow & Glynn, S.C., Milwaukee, WI, for petitioner.

Gregory M. Posner–Weber, Asst. Attorney General, Madison, WI, for respondent.

## DECISION AND ORDER

CURRAN, District Judge.

Randy Lechner, a prisoner in state custody, is seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lechner was convicted after entering no contest pleas to the following offenses: (1) second-degree reckless homicide, in violation of Section 940.06 of the Wisconsin Statutes; (2) homicide by intoxicated use of a vehi-

cle, in violation of Section 940.09(1)(a) of the Wisconsin Statutes; (3) causing great bodily harm by intoxicated use of a vehicle, in violation of Section 346.63(2)(a) of the Wisconsin Statutes; and (5) two counts of second-degree recklessly endangering the safety of another, in violation of Section 941.30(2) of the Wisconsin Statutes. Lechner's Petition is timely in that it was filed within one year of the date his opportunity to seek a writ of certiorari from the United States Supreme Court expired. *See* 28 U.S.C. § 2244(d). *See also State v. Lechner*, 217 Wis.2d 392, 576 N.W.2d 912. 217 Wis.2d 392, 576 N.W.2d 912 (1998). *See also generally Anderson v. Litscher*, 281 F.3d 672 (7th Cir.2002); *Gutierrez v. Schomig*, 233 F.3d 490 (7th Cir.2000), *cert. denied*, 532 U.S. 950, 121 S.Ct. 1421, 149 L.Ed.2d 361 (2001). This court, which is located in the district where Lechner was convicted, is empowered to consider his Petition by 28 U.S.C. § 2241(d).

The Respondent has answered and concedes that Lechner has exhausted all state remedies, but denies that Lechner is entitled to relief. The issues raised in the Petition have been fully briefed.

## I. *STANDARDS FOR COLLATERAL REVIEW*

Lechner's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA) (enacted April 24, 1996), which requires federal courts to give great deference to state court determinations.[1] The AEDPA provides that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Recently, the United States Supreme Court explained the meanings of the statutory terms "contrary to" and "unreasonable application of" contained in 28 U.S.C. § 2254(d)(1). The Court wrote:

As we stated in *Williams*, § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404–405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.* at 405–406, 120 S.Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.*, at 407–408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different

---

1. When Lechner filed his Petition and supporting brief, he challenged the AEDPA standards being used by the Seventh Circuit. Since that time, the United States Supreme Court has clarified the AEDPA standards and settled the issues raised by Lechner. *See generally Bell v. Cone*, —— U.S. ——, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

from an incorrect one. *Id.*, at 409–410, 120 S.Ct. 1495. *See also id.*, at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone,* ——— U.S. ———, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

■ Courts analyzing a habeas corpus claim must first determine whether the issue is solely a question of law, or a mixed question of law and fact, or solely a question of fact. *See Lindh v. Murphy,* 96 F.3d 856, 870 (7th Cir.1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The "contrary to" clause of subsection 2254(d)(1) applies solely to questions of law. *See Id.* at 869. It requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Id.* Subsection 2254(d)(1) refers to the holdings, as opposed to the *dicta,* of the Supreme Court's decision as of the time of the relevant state-court decision. *See Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ The disposition of a question of law raised in a federal habeas petition is governed by 28 U.S.C. § 2254(d) even though the state court's analysis of that claim refers solely to state law. As long as a constitutional issue was decided on its merits by the state court, a federal court addressing a habeas corpus petition can conduct an independent review of the applicable law to decide whether the state law cited by the state court is in conformity with federal law as established by the United States Supreme Court. *See Full-*

*wood v. Lee,* 290 F.3d 663, 677 (4th Cir. 2002).

■ Mixed constitutional questions of law and fact are those decisions "which require the application of a legal standard to the historical-fact determinations." *Thompson v. Keohane,* 516 U.S. 99, 109, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In cases where mixed questions of law and fact arise, federal courts will not grant collateral relief from state court judgments unless the state court's judgment is "unreasonable." *Id.* at 870. Unreasonableness equates to a demonstration of incorrectness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). In determining whether a state court's application of Supreme Court case law was reasonable, a federal court must assess whether the determination was minimally consistent with the facts and circumstances of the case. *See Sweeney v. Parke,* 113 F.3d 716, 718 (7th Cir.1997); *Hennon v. Cooper,* 109 F.3d 330, 334–35 (7th Cir.), *cert. denied,* 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997). The statutory "unreasonableness" standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes. *See Spreitzer v. Peters,* 114 F.3d 1435, 1442 (7th Cir.1997), *cert. denied,* 522 U.S. 1120, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998); *Hall v. Washington,* 106 F.3d 742, 748–49 (7th Cir.), *cert. denied,* 522 U.S. 907, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997).

■ Finally, facts found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke,* 133 F.3d 971, 973 (7th Cir.1997). The AEDPA amended the habeas corpus statute to provide that:

(e)(a) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).

The court must now apply these standards to Lechner's Petition.

## II. *FACTS*

The Wisconsin Supreme Court recounted the facts underlying this case as well as of the proceedings in the lower state courts. The following facts are presumed to be correct because they are uncontroverted by Lechner:

The relevant facts of this case are not disputed. On December 4, 1994, a witness observed a vehicle driven by the defendant, Randy Lechner, weaving in and out of traffic as it passed each in a succession of vehicles traveling southbound on State Highway 31. In his rearview mirror, the witness watched Lechner drive his vehicle across the double yellow center line of the highway to pass the vehicle traveling immediately behind the witness. The witness testified that Lechner then passed the vehicle in which he was traveling and the vehicle immediately in front of the witness. When Lechner reentered the southbound lane of traffic, the driver of the vehicle Lechner had just passed was forced to brake to avoid a collision. The witness estimated that Lechner was driving at a speed between 60 and 65 miles per hour even though the posted speed limit in that designated no passing zone was 45 miles per hour. The witness then watched as Lechner again drove his vehicle across the center line, passed another vehicle, and abruptly cut back into the southbound lane of traffic. Once again, the driver of the vehicle Lechner had just passed was forced to brake to avoid a collision.

When Lechner again drove his vehicle across the center line to pass another vehicle, he collided head-on with a northbound vehicle driven by Jan Pinney. The collision caused great bodily harm to Jan and to her daughter, Heather Pinney, and it killed seven-year-old Robert Pinney. Lechner was later arrested and taken into custody. A post-arrest blood test showed that Lechner had a blood alcohol concentration of 0.142%, a level above the legal limit for operating a motor vehicle. See Wis.Stat. § 340.01(46m) (1993–94).[FN2]

FN2. Unless otherwise stated, all future references to Wis.Stats. are to the 1993–94 version of the statutes. Wis.Stat. § 340.01(46m) "Prohibited alcohol concentration" means one of the following: (a) If the person has one or no prior convictions, suspensions, or revocations ... an alcohol concentration of 0.1 or more.

In its criminal complaint and amended complaint, the State charged Lechner with ten counts of violating state law:

(1) one count of second-degree reckless homicide; (2) one count of intoxicated vehicular homicide; (3) two counts of causing great bodily harm by operating a motor vehicle while under the influence of alcohol; [FN3] (4) three counts of operating a vehicle with a prohibited blood alcohol concentration; and (5) three counts of recklessly endangering the safety of another.

FN3. The State later reduced one count of causing great bodily harm by operating a motor vehicle while under the influence of alcohol to one count of causing bodily harm by operating a motor vehicle while under the influence of alcohol.

Relevant to the three issues now before this court, Lechner by pretrial motion challenged on constitutional grounds the charges for reckless homicide and intoxicated vehicular homicide, arguing that he could not be convicted twice for killing the same person. The circuit court denied Lechner's motion. Lechner also challenged on constitutional grounds the three counts of reckless endangerment, arguing that he could not be charged more than once for the same criminal act of reckless driving. The circuit court denied this motion. After a plea agreement was reached by the State and Lechner, Lechner ultimately pled no contest to the following offenses: (1) second-degree reckless homicide, in violation of Wis.Stat. § 940.06; (2) homicide by intoxicated use of a vehicle, in violation of Wis.Stat. § 940.09(1)(a); (3) causing great bodily harm by intoxicated use of a vehicle, in violation of Wis.Stat. § 940.25(1)(a); (4) causing injury by intoxicated use of a vehicle, in violation of Wis.Stat. § 346.63(2)(a); and (5) two counts of second-degree recklessly endangering the safety of another, in violation of Wis.Stat. § 941.30(2).[FN4]

FN4. Pursuant to the plea agreement, the State dismissed the three counts of operating a vehicle while under the influence of alcohol, in violation of Wis.Stat. § 346.63 and one of the three counts of second-degree reckless endangerment.

At the sentencing hearing, the circuit court sentenced Lechner to the maximum sentence on each count, with the sentences to run consecutive to each other, for a total prison sentence of 30 years. The court rejected both the State's recommended sentence of 20 years and defense counsel's four-year recommendation. After the sentence was imposed, Lechner filed a post-conviction motion challenging his convictions and his sentence. Lechner again argued that his separate convictions for reckless homicide and homicide by intoxicated use of a vehicle and his two convictions for reckless endangerment violated his constitutional protection against double jeopardy and violated his fundamental right to due process. Lechner also challenged the sentences imposed by the court, arguing that the circuit court had erroneously exercised its discretion by relying on inaccurate information in the presentence report, by ignoring mitigating factors, and by employing a preconceived sentencing policy.

After a hearing, the circuit court denied Lechner's post-conviction motions. Lechner appealed to the court of appeals for review of the circuit court's denials. The court of appeals requested certification of this case pursuant to Wis.Stat. § (Rule) 809.61. We accepted the certification and answer the three issues certified by the court of appeals.

*State v. Lechner,* 217 Wis.2d 392, 398–400, 576 N.W.2d 912, 916–17 (1998). The Wisconsin Supreme Court rejected all Lechner's grounds for appeal and upheld his conviction and sentence. *See Id.* After a

petition for a rehearing was denied, Lechner sought habeas corpus relief in this court.

## III. DISCUSSION AND DECISION

In seeking habeas corpus relief, Lechner raises three issues:

1. Whether the sentencing court relied on inaccurate information, thus depriving Lechner of due process;

2. Whether Lechner's convictions and sentences for two homicides based on a single fatality violated double jeopardy and due process; and

3. Whether Lechner's convictions and sentences for recklessly endangering safety constituted double jeopardy.

### A. SENTENCING INFORMATION

Lechner contends that his sentence violated due process because the trial court erroneously believed that Lechner had four prior criminal convictions when, in fact, he had just one prior conviction. When the inaccurate record was presented at sentencing, neither Lechner nor his attorney objected. The Respondent concedes that the conviction record presented to the sentencing court was inaccurate, but argues that the judge did not rely on the conviction record in determining the sentence. Whether Lechner was denied due process because an inaccurate criminal record was presented at sentencing is a mixed question of law and fact. Therefore, the court cannot grant relief on this claim unless the judgment of the state court was unreasonable.

### 1. Wisconsin Supreme Court Ruling

At the outset, the Wisconsin Supreme Court noted that Lechner's criminal history report was not all that inaccurate. The court observed that:

Upon closer review, the inaccuracies in the presentence report do not appear as significant as the defendant would have this court believe. Although the record is somewhat unclear concerning Randy Lechner's criminal history, it appears that Lechner was arrested three times, once in each 1980, 1988, and 1990, but was ultimately convicted of only one criminal charge. In 1980, Lechner was arrested in Illinois and charged with two counts of possession with intent to deliver a controlled substance (cocaine) and two counts of possession with intent to deliver marijuana. Pursuant to a negotiated plea agreement, the Illinois prosecutor consolidated two of the counts against Lechner and dismissed the other two. Lechner then pled guilty to the consolidated count of possession with intent to deliver both a controlled substance and marijuana. Since the two counts were consolidated, the 1980 arrest resulted in only one criminal conviction. For this conviction, the court sentenced Lechner to three years of probation. In 1988, Lechner was arrested in Illinois and charged with battery. According to Lechner, he paid a fine for this offense. The record shows only that the battery charge was dismissed. Finally, in 1990, Lechner was arrested in Wisconsin for battery. Apparently pursuant to another negotiated plea, Lechner was charged only with a violation of a misdemeanor disorderly conduct ordinance. Lechner pled no contest to this ordinance violation, paid a fine, and was ordered by the court to attend an "Alternatives to Aggression" program. According to the presentence report, Lechner admitted that alcohol or drug use played a part in both battery arrests. Lechner later disputed this statement.

*State v. Lechner,* 217 Wis.2d 392, 420 n. 14, 576 N.W.2d 912, 926 n. 14 (1998).

In a detailed analysis, the Wisconsin Supreme Court then went on to find that the sentencing court had not relied upon the inaccuracies:

The defendant has failed to show that the circuit court relied on the inaccurate number of the defendant's prior convictions contained in the presentence report. On the contrary, the record shows that the circuit court in this case considered, and based its sentence on, those primary factors a circuit court should consider when deciding which sentence to impose. These factors include "the gravity of the offense, the character of the offender, and the need for protection of the public." *Elias [v. Wisconsin],* 93 Wis.2d [278] at 284, 286 N.W.2d 559 [(1980)]; *see State v. Wickstrom,* 118 Wis.2d 339, 354–55, 348 N.W.2d 183 (Ct. App.1984).

At the sentencing hearing, the circuit court progressed through a detailed and comprehensive checklist considering the defendant's conscious decision to drink and drive, his "extremely reckless manner" of driving, and the "magnitude of the tragedy." The court also considered that the defendant had dropped out of high school, had a criminal record, and had a long history of drug and alcohol problems. In addition, the court considered the defendant's need for correctional treatment and rehabilitation, the need to protect the public from future criminal conduct by this defendant; and the need to impose a sentence that would prevent others from drinking and driving.

Before sentencing the defendant, the circuit court specifically referred to the inaccurate information contained in the presentence report when considering the character of the defendant. The circuit court's reference to the defendant's prior convictions, however, appears to have been no more than the court identifying individual episodes amounting to "warning signals" of which the defendant should have been aware. The court included as warning signals not only the defendant's prior convictions, but also his long history of drug and alcohol use, his participation in a treatment program for aggressive behavior, and his failure to complete a treatment program for alcohol abuse.

The circuit court made clear at the hearing on the motion for post-conviction relief that its focus during sentencing was not on the number of the defendant's prior convictions, but on the fact that the events giving rise to those alleged convictions evidenced the defendant's long history of drug and alcohol abuse—a history not disputed by the defendant. The circuit court, referring to the inaccurate information in the presentence report, explained:

> [I]n 1980 the defendant was convicted of two criminal counts of chemical usage, abuse, sale, but it's quite evident that the defendant was involved with mind altering chemicals. Again, you can substitute the number two for number ten or number one or even a deferred prosecution and no convictions. The point was, he had a problem. He had a brush with difficulty related to alcohol or mind altering drugs.... [T]he point was throughout his life, there were warning signs, and in so ignoring them, that was the factor ... that I considered.... The inaccuracies [in the presentence report] in my opinion are not of such a nature that it's of any relevance to what this court considered.

When sentencing the defendant, the circuit court did not consider the gravity of his past offenses; nor did it express a need or desire to punish him as a repeat offender or as a career criminal. Rather, the court considered the defendant's past record of criminal offenses and his history of undesirable behavior patterns. Both are relevant factors in assessing the defendant's character. *See State v. Tew,* 54 Wis.2d 361, 367–68, 195 N.W.2d

615 (1972). In this case, the number of the defendant's criminal offenses was a proper and relevant factor for the circuit court to consider regardless of whether the offenses resulted in dismissal, acquittal, or conviction. *See Elias,* 93 Wis.2d at 284, 286 N.W.2d 559; *State v. Bobbitt,* 178 Wis.2d 11, 18, 503 N.W.2d 11 (Ct.App.1993).

Considering the circumstances surrounding the defendant's sentencing and the circuit court's in-depth consideration of the gravity of the offenses in this case, the character of the defender, and the need for protection of the public, we conclude that the circuit court did not rely on inaccurate information in the presentence report and, therefore, did not violate the defendant's due process right to be sentenced only on materially accurate information. The circuit court did not erroneously exercise its discretion by denying the defendant's request for resentencing.

*Id.* at 420–23, 576 N.W.2d at 926–27.

## 2. United States Supreme Court Case Law

The seminal United States Supreme Court case dealing with inaccurate sentencing information is *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In that case Forest S. Tucker, was charged with bank robbery. During his trial testimony, he acknowledged three previous felony convictions. Tucker was convicted and, during the subsequent sentencing hearing, the judge took the three prior felonies into consideration. Several years later, a court determined that two of Tucker's prior convictions were constitutionally invalid because Tucker had not been represented by counsel in those prior proceedings.

Tucker then petitioned for relief pursuant to 28 U.S.C. § 2255. In affirming the Ninth Circuit's order to remand for resentencing, the Supreme Court stated that:

"[W]e deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." *Id.* at 591–92, 92 S.Ct. 589. Rejecting the government's position that the sentence would likely have been the same regardless of fewer prior convictions, the Court found that: "The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him." *Id.* Fearful that its holding in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (a defendant has a Sixth Amendment right to counsel in all felony cases) could be eroded by upholding Tucker's sentence, the Court framed the ultimate issue as follows:

... the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.

*Tucker,* 404 U.S. at 448, 92 S.Ct. 589.

The Court then concluded that:

We agree with the Court of Appeals that the answer to this question must be "yes." For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who beginning at age 17, had been unconstitutionally impris-

oned for more than ten years, including five and one-half years on a chain gang. We cannot agree with the Government that a re-evaluation of the respondent's sentence by the District Court even at this late date will be either "artificial" or "unrealistic."

*Id.* at 448–49, 92 S.Ct. 589 (footnotes omitted).

### 3. Collateral Review

■ Whether Lechner was denied due process because inaccurate sentencing information was presented to the judge is a mixed question of law and fact which cannot serve as the basis for habeas relief unless the state court's application of United States Supreme Court precedent to the facts was unreasonable. *See* 28 U.S.C. § 2254(d)(1). The Wisconsin Supreme Court did not cite federal cases in addressing Lechner's due process issue, but the state precedents employed comport with the due process considerations set forth in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), where the Court held that a defendant is deprived of due process only if the sentencing judge actually relies on inaccurate information.

■ The parties do not dispute that the criminal record information before the state sentencing court in Lechner's case was inaccurate. In contrast to Tucker, however, Lechner was represented by counsel during all the criminal proceedings against him. Under *Tucker*, the disposi-

tive question is whether the sentencing court actually relied upon the inaccurate information in imposing sentence.

In *Lechner*, the Wisconsin Supreme Court reviewed the factual record and determined that the sentencing court did not rely on the misinformation.[2] On collateral review, the Petitioner has not shown by clear and convincing evidence that the Wisconsin court's factual determination is unreasonable. The finding that the sentencing judge did not rely on the past convictions is at least minimally consistent with the facts and circumstances of the case, even if it is only one of several equally plausible outcomes. Therefore, this court cannot grant the writ of habeas corpus on this ground.

### B. DOUBLE JEOPARDY: TWO HOMICIDE CHARGES FOR A SINGLE FATALITY

Next, Lechner argues that the Double Jeopardy Clause of the Fifth Amendment and Section 939.66(2) of the Wisconsin Statutes bar his convictions and sentences for both second-degree reckless homicide, in violation of Section 940.06 [3] of the Wisconsin Statutes, and for intoxicated vehicular homicide, in violation of Section 940.09 [4] of the Wisconsin Statutes. He recognizes that multiple punishments may be imposed for the same offense if the state legislature intended to permit conviction and punishment under more than one statute. How-

---

**2.** The Seventh Circuit has recognized the difficulty of this determination in *United States, ex rel. Welch v. Lane*, 738 F.2d 863 (7th Cir. 1984), where the court observed that: "Such a review can often be a very difficult task, for the sentencing decision may depend on a wide array of factors, and the sentencing court need not explain its decision in detail." *Id.* at 866.

**3.** Section 940.06(1) of the Wisconsin Statutes provides that:

940.06. Second-degree reckless homicide

(1) Whoever recklessly causes the death of another human being is guilty of a Class C felony.

**4.** Section 940.09 of the Wisconsin Statutes provides that:

**940.09.** Homicide by intoxicated use of vehicle or firearm

(1) Any person who does any of the following is guilty of a Class C felony:

(a) Causes the death of another by the operation or handling of a vehicle while under the influence of an intoxicant.

ever, neither federal nor state law permits conviction and sentence for an offense as well as its lesser included offense. Lechner concedes that intoxicated vehicular homicide is not a lesser included offense of second-degree reckless homicide under long-established Supreme Court precedent. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Instead, he argues that Section 939.66(2) of the Wisconsin Statutes offers wider protection from multiple prosecutions and maintains that the Wisconsin Supreme Court misconstrued the statute when it upheld his convictions and sentences under the two homicide statutes.

### 1. Wisconsin Supreme Court Ruling

In addressing this issue in Lechner's case, the Wisconsin Supreme Court began with the principles that the Double Jeopardy Clause protects against multiple punishments for the same offense and that a "defendant may be charged and convicted of multiple counts or crimes arising out of one criminal act only if the legislature intends it." *State v. Lechner,* 217 Wis.2d 392, 402, 576 N.W.2d 912, 918 (1998). The court then analyzed the two homicide statutes under which Lechner was convicted and sentenced by using the method of statutory construction which had been set forth by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Where proof of one offense necessarily entails proof that another offense occurred, rendering the latter a lesser included offense of the former, the two offenses are deemed to be the "same" for purposes of the *Blockburger* "same elements" test. Applying the *Blockburger* test, the Wisconsin Supreme Court explained that:

> A comparison of the elements of the statutes involved reveals that a conviction for second-degree reckless homicide requires proof of elements not required to prove homicide by intoxicated use of a vehicle and that a conviction for homicide by intoxicated use of a vehicle requires proof of elements not required to prove second-degree reckless homicide. The offense of second-degree reckless homicide contrary to Wis.Stat. § 940.06 comprises two elements: (1) that the defendant caused the death of the victim; and (2) that the defendant caused the death by criminally reckless conduct. In contrast, the offense of homicide by intoxicated operation of a motor vehicle contrary to Wis.Stat. § 940.09(1)(a) comprises three elements: (1) that the defendant operated a motor vehicle; (2) that the defendant's operation of that vehicle caused the death of the victim; and (3) that the defendant was under the influence of an intoxicant at the time he or she operated the vehicle. *See* Wis. JI–Criminal 1185 at 1 (1993).
>
> A conviction for homicide by intoxicated use of a vehicle, therefore, does not require proof that the defendant acted with criminal recklessness or that such conduct caused the victim's death. Similarly, a conviction for second-degree reckless homicide does not require proof that the defendant was operating a motor vehicle or that the defendant was under the influence of alcohol. Under the elements-only test applied in this state, second-degree reckless homicide in violation of Wis.Stat. § 940.06 is not a lesser-included offense of homicide by intoxicated use of a vehicle in violation of § 940.09(1)(a).

*Lechner,* 217 Wis.2d at 405–06, 576 N.W.2d at 919 (footnotes omitted).

Having held that second-degree reckless homicide is not a lesser-included offense of homicide by intoxicated use of a vehicle, the court then stated that it presumed that the legislature had intended to permit cumulative punishments for both offenses.

*Id.* at 407, 576 N.W.2d at 920. The court found no contrary legislative intent and pointed out that Section 939.66(2)[5] of the Wisconsin Statutes specifically addresses the issue of multiple homicide convictions for a criminal act causing a single death. After closely examining that statute, the court focused on the provision that a defendant may not be convicted for two criminal homicides if one is "a less serious type of criminal homicide," Wis.Stat. § 939.66(2), and concluded that the two homicide statutes under which Lechner was charged are "equally serious" because they both provide for the same maximum penalty of ten years in prison. *See Lechner*, 217 Wis.2d at 410–11, 576 N.W.2d at 921. In the Wisconsin court's view, Subsection 939.66(2) does not forbid charging a defendant for two equally serious crimes resulting in one person's death.

The Wisconsin Supreme Court then rejected Lechner's argument that the maximum penalties are not the same because intoxicated use of a motor vehicle is also punished by revocation of driving privileges and a surcharge for a driver assessment program. *See Id.* at 411, 576 N.W.2d at 922. The court reinforced its position by pointing out that the legislature enacted the two statutes to protect distinct public interests and concluded by stating that: "The different conduct proscribed by and the different purposes of the reckless homicide and homicide by intoxicated use of a vehicle statutes further convince us that the legislature intended multiple convictions and punishments for those offenses." *Id.* at 412–13, 576 N.W.2d at 922. Consequently, the court held that:

> For the foregoing reasons, we conclude that the legislature intended that multiple convictions and punishments attend the separate homicide offenses to which the defendant here pled no contest. We therefore answer in the negative the first issue certified by the court of appeals. The defendant's convictions and punishments for second-degree reckless homicide and homicide by intoxicated use of a vehicle are not multiplicitous,

5. Section 939.66 of the Wisconsin Statutes provides that:

> **939.66.** Conviction of included crime permitted
> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
> (1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged.
> (2) A crime which is a less serious type of criminal homicide than the one charged.
> (2m) A crime which is a less serious or equally serious type of battery than the one charged.
> (2r) A crime which is a less serious type or violation under s. 943.23 than the one charged.
> (3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent.
> (4) An attempt in violation of s. 939.32 to commit the crime charged.
> (4m) A crime of failure to timely pay child support under s. 948.22(3) when the crime charged is failure to pay child support for more than 120 days under s. 948.22(2).
> (5) The crime of attempted battery when the crime charged is sexual assault, sexual assault of a child, robbery, mayhem or aggravated battery or an attempt to commit any of them.
> (6) A crime specified in s. 940.285(2)(b)4. or 5. when the crime charged is specified in s. 940.19(2) to (6), 940.225(a), (2) or (3) or 940.30.
> (6c) A crime that is a less serious type of violation under s. 940.285 than the one charged.
> (6e) A crime that is a less serious type of violation under s. 940.295 than the one charged.
> (7) The crime specified in s. 940.11(2) when the crime charged is specified in s. 940.11(1).

and, therefore, do not violate his right to be free from double jeopardy.

*Id.* at 413, 576 N.W.2d at 922.

### 2. United States Supreme Court Case Law

█ The Double Jeopardy Clause of the Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. Three separate guarantees inhere in this constitutional provision: (1) once acquitted of a charge, a person shall not be prosecuted again for the same offense; (2) once convicted of a crime, a person shall not be prosecuted again for that same crime; and (3) one shall not be punished twice for the same offense. *See United States v. Hatchett,* 245 F.3d 625, 630 (7th Cir.2001); *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

█ In 1993, the United States Supreme Court rejected its own "same conduct" test for double jeopardy,[6] then explained that:

> The Double Jeopardy Clause, whose application to this new context we are called upon to consider, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. This protection applies both to successive punishments and to successive prosecutions for the same criminal offense. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
>
> . . . .
>
> In both the multiple punishment and multiple prosecution contexts, this Court

has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See, e.g., Brown v. Ohio,* 432 U.S. 161, 168–169, 97 S.Ct. 2221, 2226–2227, 53 L.Ed.2d 187 (1977); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (multiple punishment); *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) (successive prosecutions). The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Thus, the *Blockburger* test governs Double Jeopardy issues on collateral review.

The Supreme Court has also sanctioned examining whether the legislature intended to provide for multiple punishments. *See, e.g., United States v. Woodward,* 469 U.S. 105, 108–10, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam) (indictment not multiplicitous because no indication Congress intended not to allow separate punishment for distinct offenses of making false statements to federal agency and intentionally failing to report transporting over $5,000 into country); *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (Double Jeopardy Clause not violated by cumulative punishment for same conduct if legislature clearly intended that result); *Albernaz v. Unit-*

---

**6.** The "same conduct" test, set forth in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), provided that: "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted," a second prosecution may not be had. *Id.* at 510, 110 S.Ct. 2084. *Grady v. Corbin* was overruled by *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

*ed States*, 450 U.S. 333, 340–42, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (because *Blockburger* test merely rule of statutory construction, other evidence may show contrary legislative intent; congressional silence interpreted as acknowledging that *Blockburger* analysis appropriate).

### 3. Collateral Review

 Whether Lechner's right to be free from double jeopardy was violated by his convictions and sentences under two homicide statutes is a question of law. Therefore, habeas corpus relief cannot be granted unless the ruling of the Wisconsin Supreme Court was contrary to federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

The parties in this case agree that the Wisconsin Supreme Court properly applied the *Blockburger* test to conclude that homicide by intoxicated use of a vehicle is not a lesser included offense of second-degree reckless homicide. However, the parties diverge as to the correctness of the Wisconsin Supreme Court's analysis of legislative intent. The Petitioner maintains that the court misinterpreted Subsection 939.66(2) of the Wisconsin Statutes when it decided that the punishments for second-degree reckless homicide and homicide by reckless use of a motor vehicle are the same in that, while both crimes are punished by a ten year prison sentence, homicide by reckless use of a motor vehicle is also punished by loss of driving privileges and a $250 surcharge for a driver assessment program. The Wisconsin court ruled that the prison terms were the controlling factors in making the two crimes equally serious.

 The Petitioner has cited nothing to show that this ruling on legislative intent is contrary to any United States Supreme Court holding. Whether the Wisconsin Supreme Court misconstrued Subsection 939.66(2) of the Wisconsin Stat-

utes is immaterial. Federal courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3). Violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violated the Petitioner's Fourteenth Amendment right to due process. *See Estelle v. McGuire*, 502 U.S. 62, 65, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Federal habeas corpus relief does not lie for errors of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). A federal court is bound by the state court's interpretations of state law. *See, e.g., Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). In other words, federal judges may not issue writs of habeas corpus based on interpretations of state law that depart from the views the state courts themselves hold. *See Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475.

 A state constitution may afford more protection than the United States Constitution, but cannot afford less. Lechner acknowledges that Wisconsin has legislated broader protection from double jeopardy by operation of Section 939.66. Nevertheless, the United States Supreme Court has not mandated any broader protection than *Blockburger*. Under *Blockburger*, Lechner's right to be free of double jeopardy has not been violated. Therefore, on collateral review, this court need not decide whether the Wisconsin Supreme Court misinterpreted the Wis-

consin statute and will not grant the writ on this ground.

## C. DOUBLE JEOPARDY: TWO CONVICTIONS FOR RECKLESSLY ENDANGERING SAFETY

Finally, Lechner argues that the Double Jeopardy Clause protects him from having been convicted and sentenced on two separate counts of second-degree recklessly endangering safety, in violation of Section 941.30 [7] of the Wisconsin Statutes, because the charges were based upon a continuous course of conduct (reckless driving over a one-half mile stretch of highway) rather than separate offenses. Lechner points out that the episode took place within thirty seconds and did not involve any break in conduct. In addition, Lechner maintains that the Wisconsin Legislature did not intend to allow multiple convictions for a continuing reckless act that endangers safety.

### 1. Wisconsin Supreme Court Ruling

In *Lechner*, the Wisconsin Supreme Court set forth the double jeopardy test governing this issue by reference to state law:

> The double jeopardy clause bars the State from dividing a single offense into multiple charges. *See Blenski v. State*, 73 Wis.2d 685, 245 N.W.2d 906 (1976). In determining whether the State has impermissibly divided a single course of conduct into separate violations of the same statute, courts of this state consider (1) whether each offense is identical in law and in fact; and (2) whether the legislature's intent is to allow multiple convictions. *See Rabe*, 96 Wis.2d at 65, 67, 291 N.W.2d 809.
>
> In analyzing the defendant's "continuous offense" challenge, we must first discern

whether the separate counts of second-degree reckless endangerment to which the defendant pled no contest are different in either fact or law. *See Rabe*, 96 Wis.2d at 65, 291 N.W.2d 809; *State v. Van Meter*, 72 Wis.2d 754, 758, 242 N.W.2d 206 (1976). Since the defendant pled no contest to two separate counts of violating the same statutory provision, the offenses are identical in law. *See Sauceda*, 168 Wis.2d at 493–94 n. 8, 485 N.W.2d 1; *Van Meter*, 72 Wis.2d at 758, 242 N.W.2d 206. Our focus, therefore, is not on statutory definitions but on the facts giving rise to each offense; the determinative inquiry is whether a conviction for each offense requires proof of an additional fact that conviction for the other offenses does not. *See Sauceda*, 168 Wis.2d at 493–94 n. 8, 485 N.W.2d 1; *Van Meter*, 72 Wis.2d at 758, 242 N.W.2d 206; *see, e.g., Rabe*, 96 Wis.2d at 65–68, 291 N.W.2d 809; *Harrell*, 88 Wis.2d at 556–60, 277 N.W.2d 462. Accordingly, in "continuous-offense" cases such as this one, "the question turns on whether the defendant's repeated commission of the same offense at different places or times constitutes an ongoing crime or several separate offenses." *Rabe*, 96 Wis.2d at 65, 291 N.W.2d 809.

*State v. Lechner*, 217 Wis.2d 392, 413–14, 576 N.W.2d 912, 924 (1998).

The court then recounted the facts leading to Lechner's recklessly endangering safety charges:

> The record in this case establishes that the defendant committed at least two distinct acts of reckless conduct, putting at risk the life of a different person with each act. According to the record, a witness observed the vehicle driven by

---

7. Section 941.30 of the Wisconsin Statutes provides that:

Recklessly endangering safety

. . . .

(2) Second-degree recklessly endangering safety. Whoever recklessly endangers another's safety is guilty of a Class E felony.

the defendant swerving in and out of traffic at a rate of speed well above the posted speed limit. On at least two separate occasions, the defendant drove his vehicle across the double yellow centerline of the highway, accelerated, and passed a different vehicle. On at least two separate occasions, the defendant abruptly reentered the southbound traffic lane, forcing the driver of the vehicle he had just passed to take evasive action to avoid a collision. Each time he drove his vehicle across the centerline of the highway, passed a different vehicle, and abruptly reentered the traffic lane, the defendant created a separate, unreasonable and substantial risk of harm to a different human being—the driver of the vehicle he had just passed and cut off on the highway.

It is significant that the defendant here did more than pass at one time a continuous line of cars, putting each successive driver at risk as he passed him or her. Each of the defendant's decisions to pass each successive vehicle was not the result of an original impulse to pass the first vehicle, but rather was a fresh impulse. Each of the defendant's acts of reckless conduct had come to an end before a separate act began. Each time he pulled his vehicle out and passed a different vehicle, the defendant commenced a separate, conscious decision to act. Each time the defendant exited and reentered the traffic lane, he completed a separate, conscious decision to act. Each time the defendant exited and reentered the traffic lane, he completed a separate, distinct act of criminally reckless conduct.

*Id.* at 415–16, 576 N.W.2d at 923–24.

Thus, the court held that:

Based on the facts set out in record, we conclude that there was a sufficient break in the defendant's conduct to constitute at least two separate and distinct criminal acts of second-degree reckless endangerment under Wis.Stat. § 941.30(2). *See [State v.] Rabe,* 96 Wis.2d [48] at 66, 291 N.W.2d 809 [(1980)]; *Harrell [v. State],* 88 Wis.2d [546] at 565, 277 N.W.2d 462 [(1979)].

*Id.* at 416, 576 N.W.2d at 924.

■ It is multiplicitous to charge separate counts of the same offense and to impose separate punishments upon conviction, if other factors clearly indicate that the legislature intended a single unit of prosecution for the offenses for which the defendant was convicted. *Lechner,* 217 Wis.2d at 416–17, 576 N.W.2d at 924. Therefore, the second inquiry undertaken by the Wisconsin Supreme Court was to discern legislative intent. The court said:

We conclude that there are no factors which clearly indicate that the legislature intended that all acts of second-degree reckless endangerment be prosecuted in a single count. First, this court has held that, as a general rule, where different victims are involved, the legislature intends to allow a corresponding number of punishable crimes. *See Rabe,* 96 Wis.2d at 67–68, 291 N.W.2d 809; *see also Austin v. State,* 86 Wis.2d 213, 223, 271 N.W.2d 668 (1978). In this case, each of the defendant's distinct criminally reckless acts endangered the safety of at least one other human being (the driver of each vehicle he passed and then cut off). We, therefore, presume that the legislature intended to allow a separate punishable offense for each of the defendant's criminally reckless acts. Second, the language and purpose of Wis.Stat. § 941.30(2) indicate that the legislature's intent was to allow multiple convictions and punishments for each act of reckless endangerment. When reviewing the language of a criminal statute "[t]he test is whether the individual acts are prohibited, or the course of

action which they constitute. If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty." *Blockburger,* 284 U.S. at 302, 52 S.Ct. at 181 (quoting *Wharton's Criminal Law* (11th ed.) § 34 n. 3); *see also Rabe,* 96 Wis.2d at 70–74, 291 N.W.2d 809. Section 941.30(2) does not proscribe reckless conduct generally, but rather penalizes individual acts of criminal recklessness. For each conviction for violating Wis.Stat. § 941.30(2), a defendant must first be found to have endangered the safety of another person. *See* Wis. JI–Criminal 1347 at 1 (1989). Proof of the defendant's reckless conduct alone is insufficient for a conviction. *See Id.* Section 941.30(2), therefore, punishes the individual acts of a defendant and not the course of action which those acts constitute. Each of the defendant's acts of second-degree reckless endangerment is separately punishable.

*Id.* at 417, 576 N.W.2d at 924.

Based upon this reasoning, the court held that:

> For the foregoing reasons, we conclude that the legislature intended that multiple punishments attend the separate counts to which the defendant here pled no contest. We therefore answer the second issue certified by the court of appeals in the negative. The defendant's convictions and punishments for two counts of second-degree recklessly endangering safety were not multiplicitous and, therefore, do not violate his rights to be free from double jeopardy.

*Id.,* 576 N.W.2d at 924–25.

### 2. United States Supreme Court Case Law

The United States Supreme Court has held that the government may not charge a single offense in two or more counts. *See Sanabria v. United States,* 437 U.S. 54, 66 n. 20, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). The purpose of this rule is to prevent multiple punishments for the same act in violation of the Double Jeopardy Clause of the Fifth Amendment. *See Schiro v. Farley,* 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ Conversely, the Double Jeopardy Clause is not violated when multiple, but separate, violations of the same provision are charged in multiple counts. *See Schiro v. Farley,* 510 U.S. at 229, 114 S.Ct. 783. Double Jeopardy Clause protects only against imposition of multiple criminal punishments for the same offense, and then only when the multiple punishments are imposed in successive proceedings. *See Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The Court has stated that: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

### 3. Collateral Review

■ Whether Lechner was punished twice for second-degree recklessly endangering safety in violation of his constitutional protection from double jeopardy is a mixed question of law and fact. Therefore, habeas corpus relief cannot be granted unless the Wisconsin Supreme Court's decision was an unreasonable application of clearly established federal law as determined by the United States Supreme Court to the uncontroverted facts. *See* 28 U.S.C. § 2254(d)(1).

■ Even though the Wisconsin Supreme Court relied on Wisconsin case law to resolve this double jeopardy issue, the state court's conclusions of law faithfully

reflect the United States Supreme Court's holdings in *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) and *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). The parties do not dispute that Lechner's two second-degree recklessly endangering safety charges were violations of the same statute, Wis.Stat. § 941.30(2). There is also no dispute that the government may not ·charge a single offense in several counts. *See Sanabria v. United States,* 437 U.S. 54, 66 n. 29, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). The Wisconsin Supreme Court could not find any evidence of legislative intent construing Section 941.30 of the Wisconsin Statutes, so the presumption is that a legislature does not intend to impose two punishments for a single offense. Therefore, the dispositive issue is a factual question of whether Lechner engaged in one act or multiple acts of endangering safety. The Petitioner contends that his endangering safety was all part of one brief, continuous act, while the Wisconsin Supreme Court decided that Lechner engaged in at least two separate and distinct acts of endangering safety.

The Wisconsin court analyzed the facts and reasoned that each time Lechner, who was exceeding the speed limit, pulled out of a line of traffic to pass a different car occupied by a different driver, he perpetrated a distinct act of endangering safety. These facts, found by the Wisconsin courts, are presumed correct and Lechner has not rebutted this presumption by clear and convincing evidence. Moreover, he has not shown by reference to United States Supreme Court precedent that the Wisconsin Supreme Court's application of clearly established federal law to the established facts was objectively unreasonable. Therefore, this court will not grant the writ of habeas corpus to Lechner based upon this final ground for relief.

### ORDER

For the reasons explained above, the court ORDERS that Randy J. Lechner's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (filed September 8, 1999) IS DENIED UPON ITS MERITS.

IT IS FURTHER ORDERED that this action is dismissed upon its merits.

IT IS FURTHER ORDERED that the Clerk of Court shall enter a final judgment as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

Randy J. Lechner's Petition for a writ of habeas corpus came before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the court having denied Lechner's Petition,

IT IS ORDERED AND ADJUDGED

that this action is dismissed upon its merits.