COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1846-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF579

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOHN DOE,

   DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. John Doe[1] was convicted of multiple crimes related to his possession and sales of heroin and marijuana at various times in 2013 and 2014. After Doe was sentenced and while he was an inmate in a correctional facility, he provided assistance to corrections officials and law enforcement in two matters. Based on that assistance, Doe moved the circuit court to use its common-law authority to modify his sentences. The court denied the motion and he now appeals.

¶2     Doe argues that the circuit court erred in deciding that he failed to show by clear and convincing evidence that the assistance constitutes a new factor that could merit modification of his sentences. Doe also argues that the court erroneously exercised its discretion in deciding that, assuming that this assistance constitutes a new factor, modification is not justified. We assume without deciding that Doe is correct that he identified a new factor. We affirm on the ground that Doe fails to show that the court erroneously exercised its discretion in deciding that modification of the sentences is not justified.[2]

---

[1] We follow the parties in shielding the appellant's identity in this opinion because this appeal references his cooperation with prison authorities and law enforcement in connection with investigations of alleged wrongdoing in a prison facility.

[2] Doe's opening appellate brief does not comply with WIS. STAT. RULE 809.19(8)(bm) (2021-22), which addresses the pagination of appellate briefs now that they are electronically filed in PDF format and electronically stamped with page numbers when they are accepted for efiling. *See* RULE 809.19(8)(bm) (when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). The pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on each page of a brief. Supreme Court Note, 2021, WIS. STAT. RULE 809.19. All references to the Wisconsin Statutes are to the 2021-22 version.

## BACKGROUND

¶3      In 2014, a jury found Doe guilty of 17 criminal violations, including the manufacture or delivery of heroin, maintaining a drug trafficking place, and felon in possession of a firearm.  Taking into account a later adjustment by the sentencing court regarding extended supervision time, the court imposed nine years of initial confinement on Doe's conviction for possession with intent to deliver more than 10 grams but less than 50 grams of heroin, followed by five years of extended supervision to be served consecutively to other concurrent sentences for Doe's other convictions.[3]  Cumulatively, Doe is serving a total of 15 years of initial confinement, followed by 10 years of extended supervision.  The sentencing court found that Doe is not eligible for potential early release under the Challenge Incarceration Program or the Earned Release Program.  We provide additional detail regarding the sentencing below.

¶4      Omitting reference to postconviction events that are not pertinent to this appeal, in May 2023 Doe filed the postconviction motion at issue in this appeal, a motion for modification of his sentences based on a new factor.  Attached were three exhibits:  an affidavit by a retired lieutenant correctional officer and two sets of reports from a local sheriff's office.  Based on these submissions, Doe argued that he had been "the first inmate to come forward" to authorities in two separate prison-based criminal investigations and that in those matters he had been "cooperative with law enforcement despite the fact that such cooperation puts inmates at significant risk in the [prison] facility."

---

[3] The Hon. Richard T. Werner ("the sentencing court") sentenced Doe.  The Hon. John M. Wood ("the postconviction court") issued the order that Doe challenges in this appeal.

¶5     One matter involved what Doe characterized as an investigation into an "inappropriate and illegal sexual relationship" between a correctional officer and a prison inmate, resulting in the termination of the officer's employment and the referral of criminal charges to the local district attorney. The other matter involved Doe "report[ing] known drug activity in the [prison] facility" after Doe learned that another inmate "planned with the assistance of a correctional officer to bring a large quantity of drugs and other contraband into the prison, resulting in that inmate's transfer to maximum security, the firing of the correctional officer involved, and referral for charges."

¶6     After considering briefing by the parties and oral arguments, the postconviction court denied the motion. The court concluded that Doe "has not met his burden of establishing a new factor." The court also ruled that, even if Doe had made that showing, "this set of facts does not justify sentence modification" because that "would constitute a significant attack on the very purpose of" the sentences that the sentencing court imposed. We summarize additional statements by the postconviction court below.

## DISCUSSION

¶7     Wisconsin circuit courts have inherent authority under the common law to modify a criminal sentence when the defendant shows that a "new factor" calls for modification of one or more sentences. *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. "The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor." *Id.*, ¶36. A new factor is "'a fact or set of facts highly relevant to the imposition of sentence'" that was not known to the sentencing court, either because it was not in existence at the time of sentencing or because it was unknowingly overlooked by

both parties. ***Id.***, ¶40 (quoted source omitted). Determining whether there is a new factor presents an issue of law. ***Id.***, ¶36. If the defendant shows a new factor, the circuit court, in the exercise of its discretion, determines whether sentence modification is justified. ***Id.***, ¶37.

¶8      For example, in ***State v. Lechner***, 217 Wis. 2d 392, 576 N.W.2d 912 (1998), the defendant argued that sentence modification was justified based on the alleged new factor that inaccurate information contained in the presentence report had caused a miscalculation in a recommended sentencing guideline that was presented to the circuit court. ***Id.*** at 423-24 (recalculation of the guidelines based on the accurate number of the defendant's prior convictions changed the suggested sentence for two second-degree recklessly endangering safety convictions from a term of imprisonment to probation). When presented with this issue in a postconviction motion, the circuit court "stated that based on what it found to be aggravating circumstances in this case it did not rely on the guidelines when it initially sentenced the defendant." ***Id.*** at 424-25. Our supreme court provided little discussion on this issue, other than to note that the sentencing court was not required to impose a sentence recommended by the sentencing guidelines. ***Id.*** The supreme court determined that the "decision to impose a sentence outside those guidelines under the circumstances of this case" was "within the sound discretion of the sentencing court." ***Id.*** Under the circumstances, it was not an erroneous exercise of discretion to deny the requested sentence modification. ***Id.*** at 426.

¶9      Pertinent here, because the defendant must make both the existence-of-the-new-factor and the justification-for-modification showings, "if the court determines that in the exercise of its discretion, the alleged new factor would not justify sentence modification, the court need not determine whether the facts

5

asserted by the defendant constitute a new factor as a matter of law." ***Harbor***, 333 Wis. 2d 53, ¶38. The logic of this rule is obvious. If it is clear that no modification is justified under the circumstances alleged by the defendant, it does not matter if there is a new factor.

¶10 Turning to our review of the postconviction court's ruling on the justification-for-modification determination, if we determine that the court did in fact exercise discretion (and here Doe does not dispute that the postconviction court exercised its discretion on this issue), we reverse only if the court "'applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts.'" *See* ***State v. Wiskerchen***, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730 (quoted source omitted). Further, "'[w]e look for reasons to sustain a [circuit] court's discretionary decision.'" *See* ***id.*** (quoted source omitted).[4]

¶11 Bearing those legal standards in mind, we now provide further background regarding pertinent comments of the sentencing court and the postconviction court. Then we explain why we conclude that Doe fails to establish that the postconviction court, when it exercised its discretion to determine that sentence modification is not justified, applied a wrong legal standard or failed to rule based on a logical interpretation of the facts.

¶12 The overall theme of the sentencing court's remarks was that Doe poses "a danger to the community," based on his significant criminal history,

---

[4] Doe suggests a misunderstanding of the legal standards when he states in his briefing that he "moves this court for a modification of his sentence." The justification-for-modification determination is a discretionary one made by a circuit court, not by this court. If a circuit court fails to exercise its discretion, a remand back to the circuit court would be appropriate, but Doe does not argue that the postconviction court here failed to exercise its discretion.

including as a drug dealer, and on his conviction for possessing as a felon the firearm that was found in a search executed at his residence. "I need to incarcerate you to protect the public. I do need to impose a punitive sanction. And I need to impose a sentence that does not unduly depreciate the seriousness of these offenses." The court said it hoped that the sentences it imposed would "have some specific deterrent effect on" Doe.

¶13 The sentencing court noted that Doe, who was 29 at the time of sentencing, "started early in the drug trade" and that as of the time of the crimes in this case was "engaged heavily in the drug trade." When Doe was 16 or 17, he was charged with possession with intent to deliver marijuana, waived into adult criminal court, convicted, and placed on probation. Then, instead of staying crime-free while on probation, that status was revoked when he engaged in two separate armed robberies while concealing his identity. This resulted in a term of imprisonment that included a period of extended supervision that commenced in November 2012, when Doe was 27. The court noted that Doe ultimately "successfully complete[d]" his period of extended supervision, but that he served "approximately six separate periods of" reincarceration based on "allegations of assaultive and threatening behavior."

¶14 The sentencing court noted that within just 10 months after Doe was placed on extended supervision for the armed robberies, he engaged in the first charged drug delivery in this case, and the court expressed doubt that this was his first illegal drug activity after being placed on extended supervision. Further, the court characterized Doe as having been convicted in this case of engaging in an "ongoing enterprise" in 2013 and 2014 of dealing both heroin and marijuana—despite Doe's false representation to the jury at trial (while representing himself with standby counsel) that he dealt only marijuana. Along the same lines, the

sentencing court gave Doe credit for his "intellectual ability," but expressed the view that, by running a "drug enterprise," Doe was "engaged in being an entrepreneur and dealing drugs and that's how you made your living rather than try to find an honest job." If it were not for the search executed by police at his residence, Doe "would have continued an ongoing enterprise."

¶15 The sentencing court expanded on its views of the harms created by this form of entrepreneurship by noting that Doe had commented to the author of the presentence investigation report that everyone in his Beloit neighborhood was a heroin addict and that people in Beloit have to carry weapons to protect themselves. "Well, quite frankly, that's the situation that you helped to create ... by your dealing heroin .... So you are part and parcel of" these grave problems in Beloit.

¶16 The sentencing court noted that a "risk assessment" placed Doe at "a high violent recidivism risk and a high general recidivism risk." "In my estimation you are a danger to the community."

¶17 The sentencing court acknowledged that none of the counts of conviction in this case were "violent offenses wherein you went out and you battered someone or did anything of that nature." At the same time, the court noted, heroin addiction "clearly is a plague on our society," both locally in Rock County and elsewhere. The court further noted that the "ripple effect" from the drug trade creates "danger in the neighborhood, [the] carrying [of] weapons."

¶18 The postconviction court ruled in pertinent part that, even if Doe could show a new factor, "there's no justification for a sentence modification," because modification would "constitute a significant attack on the very purpose of" the sentence. The court characterized one significant aspect of the sentencing

court's rationale in fashioning the sentence as having been that Doe "contribut[ed] to the destruction of families, neighborhoods, and communities" in "a continued and ongoing enterprise." Lesser sentences, the court reasoned, would "unduly depreciate the seriousness of the underlying conduct[,] which was … potentially fatal to a lot of members of our community." The postconviction court also identified the "very purpose" of the sentences as involving the closely related concern over protecting the community from the types of harms that would result from Doe continuing to deal heroin if not confined in prison, as he was likely to do.

¶19 When summarized in terms of Wisconsin case law governing sentencing, the postconviction court in effect interpreted the sentencing court as having placed significant weight on two sentencing objectives. *See* ***State v. Gallion***, 2004 WI 42, ¶41, 270 Wis. 2d 535, 678 N.W.2d 197 (explaining that sentencing courts "are to identify the general objectives of greatest importance," which "may vary from case to case"). Under this interpretation, the sentencing court essentially prioritized the "punishment of the defendant" and the "protection of the community," which, at least under the circumstances here, were closely related and both pointed toward a relatively longer cumulative prison sentence. *See id.*, ¶40; ***Harbor***, 333 Wis. 2d 53, ¶49.

¶20 We assume without deciding that Doe is correct that, cumulatively, his substantial assistance to corrections officers and to law enforcement constituted a new factor. We resolve this appeal based on our conclusion that Doe fails to show that the postconviction court erroneously exercised its discretion in ruling that Doe did not show a justification for modification of the sentences. We discern no error of law by the postconviction court on this issue, and the court

9

provided a rationale based on one reasonable interpretation of the sentencing transcript.

¶21    Doe makes only limited arguments, which are not well developed, that the sentencing court erroneously exercised its discretion in declining to modify Doe's sentences.

¶22    Doe makes unclear and unsupported assertions related to the separate existence-of-the-new-factor issue. He appears to argue that aspects of the court's reasoning as to whether sentence modifications are justified are in tension with the assumption that Doe established that the assistance he provided constituted a new factor. The postconviction court addressed the existence-of-the-new-factor issue at greater length, but the court's concise comments on the justification-for-modification issue may be reasonably construed as standalone comments. It is true that at least some of the postconviction court's considerations regarding the existence of a new factor bear on its reasoning on the justification-for-modification issue. Yet Doe fails to establish that any aspect of the postconviction court's reasoning on the existence-of-the-new-factor issue was irreconcilable with its conclusion on the justification-for-modification issue, or more generally that the court was not free to weigh many of the same considerations in addressing each of the two requirements: the existence of a new factor and the justification for modification.

¶23    Doe argues that the postconviction court improperly "rubber stamped the original sentence," by "impermissibly downplay[ing] the good Mr. Doe did for his community by participating in these investigations." In our analysis, we assume without deciding in his favor that Doe's assistance was substantial and performed at considerable potential risk to his own safety,

consistent with the arguments that Doe made in the circuit court. But under the postconviction court's interpretation of the objectives expressed by the sentencing court, the "good" that Doe might have accomplished through his assistance could reasonably be viewed as having no relevance to the sentencing court's emphasis on punishing the defendant and only limited relevance at best to protecting the community in the future.

¶24 Doe zeros in on two statements made by the postconviction court in explaining its justification-for-modification ruling. Although his discussion is unclear, he may mean to suggest that the court, in making these comments, erroneously exercised its discretion by basing its denial of the modification on an incorrect understanding of the existence-of-the-new-factor issue.

¶25 In the first statement that Doe highlights, the postconviction court said that the assistance which Doe provided was not "significant enough under the totality of the circumstances, which would include consideration of the fruits of the defendant's assistance being highly relevant to the imposition of the sentence here." We interpret this to convey the idea that modification is not justified in part because the nature of the assistance that Doe provided does not shed light on the core objectives expressed by the sentencing court in imposing the sentences that it fashioned, as interpreted by the postconviction court. Doe fails to establish that this constituted an erroneous exercise of discretion.

¶26 In the second statement that Doe highlights, the postconviction court took the position that Doe "appears to have only reported the information in an attempt to reduce his sentence, not because it was the right thing to do as far [as] I'm concerned." But the court did not purport to rest its decision on this doubt about Doe's motives. Further, Doe fails to cite legal authority supporting the

proposition that, in exercising its discretion on the justification-for-modification issue, a circuit court may not take into consideration its perceptions of the motivations of the defendant in taking the actions that the defendant submits call for sentence modification, as those motivations may properly bear on the justification for a modification.

¶27 Doe may intend to argue that *State v. Doe*, 2005 WI App 68, 280 Wis. 2d 731, 697 N.W.2d 101, places out of bounds, when analyzing whether a new factor justifies sentence modification, a defendant's motivations in providing substantial assistance. If he intends this argument, he is incorrect. *Doe* clarifies that a "defendant's substantial and important assistance to law enforcement after sentencing *may* constitute a new factor that the [circuit] court can take into consideration when deciding whether modification of a sentence is warranted." *Id.*, ¶1 (emphasis added). In other words, a defendant's substantial assistance to law enforcement may be considered as a basis for sentence modification. But *Doe* does not dictate that all such assistance merits sentence modification, as Doe suggests. And, returning to the core point, Doe fails to cite any passage in *Doe*, or any other legal authority, that prohibits a circuit court addressing the issue of whether a requested sentence modification is justified from taking into consideration its perception of the motivations of the defendant in providing assistance to authorities.

¶28 Doe also suggests that the postconviction court failed to take into account his alleged development of "prosocial attributes," "tangible growth," and maturity while he has been in prison. The postconviction court at one point said that, to the extent that Doe had made "rehabilitative efforts," this could be relevant, although at other times it seemed to take a contrary view. The court also noted evidence of "some significant progress with regard to behavior and attempts

to prepare [himself] for re-integration into society," although the court noted the absence of records about potential minor conduct violations. The court deemed the progress that it did see as "highly commendable." But on this topic, the court reasonably construed one point of significant emphasis in the sentencing court's rationale as focusing on prison terms long enough to protect the community from what the sentencing court viewed as the devastating ripple effects of Doe's persistent drug dealing. The postconviction court could reasonably view Doe's commendable efforts at trying to prepare himself for reintegration into society as insufficient to address the sentencing court's concern that, upon release from prison, he would go back to heroin dealing, consistent with his long pattern of illegal activity.

¶29 Doe makes the sweeping assertion that, under the logic applied by the postconviction court here, "any inmate who provides postconviction assistance [to] law enforcement has no outlet for a sentence modification." This assertion ignores both the substance of the sentencing court's expressed rationale for its sentences (the specific sentencing rationales in other cases will differ) and also ignores our standard of review for the discretionary aspect of circuit court decisions on the justification-for-modification issue (erroneous exercise of discretion).

¶30 Summing up, the sentencing court made clear that, given what it found to be Doe's persistent history of criminality (drug dealing in particular), it viewed Doe as a significant and ongoing threat to public safety for the length of the prison terms that it set. The postconviction court supported its position that, because the motion for modification failed to sufficiently address that core sentencing objective, Doe did not demonstrate that a modification of his sentences was warranted.

## CONCLUSION

¶31     For these reasons, we affirm the order denying the motion to modify the sentences.

*By the Court*.—Order affirmed.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)5.